Battle, J.
 

 The contest between the parties arises upon the construction of the following clause in the will of Benjamin Newland:
 

 “ N. B. — I further will and bequeath unto my wife, Catharine Newland, two servant boys, Richard and Pinckney, to have and to hold, and to expose of at her own discretion, while she lives
 
 *464
 
 and at ber death, so as not to be disposed of out of the family,” &c. The question is, whether the testator’s widow took a life estate only in the two slaves thus bequeathed to her, with a power of disposing of them, either during her life, or at her death,
 
 in
 
 the family, or whether she hath an absolute interest in them, by force of the expression, “ to have and to hold, and to expose of at her own discretion, while she lives, and at her death,” which cannot he controlled by the words which follow, “ so as not to be disposed of out of the family.” If, in ascertaining the meaning of the testator, we were confined to this clause alone, we should feel great difficulty in coming to any satisfactory conclusion.
 

 The testator was evidently
 
 inops concilii,
 
 and was himself unskilled in the use of language, and, perhaps, had no very definite idea of what he desired, with regard to the ultimate destination of his servants, Richard and Pinckney; or, what is more likely, he had desires inconsistent one with another, which be did not well know how to reconcile. But it is fortunate for us, that in our investigations to find out his intentions, we have the right, and it is our duty, to look to other parts of his will, so that the lights, if there be any there to be found, may be brought to bear upon and illumine the darkness of the clause under consideration. In turning then, to the other parts of his will, we at once perceive that the controlling desire of the testator was to make ample provision, so far as his estate would allow, for the comfort of his wife, during her life. To that end, after giving to each of her daughters a servant girl, and to his sons each an inconsiderable portion of personal property, he gives to his wife, for life, all his land, servants, and other chattel property, and after her death, the same to be equally divided among his sons, with certain exceptions to the prejudice of some of them. With this clause, and the one which follows, in which he appoints his wife and two of his sons as executrix and executors of his will, he seems to have made an end of disposing of the woidly estate, “wherewith it had pleased God to bless him,” for he thereto adds the usual form of attestation. Ho
 
 *465
 
 then seems to have thought that he had not yet sufficiently provided for his wife, and that he ought to give her two of his male servants, to be disposed of at her own discretion, either for her own benefit, or for that of some of the family, perhaps one or more of their children, to whom he had not given an equal share with the rest. He therefore proceeds witn a “
 
 nota bene”
 
 to add the clause which we are now called upon to construe. From this view of the will, it is clear that the testator intended to separate his servant boys, Richard and Pinckney, from ihe other servants, and to give to his wife a different interest in them from what she had in the others ; that is to say an interest other than alife estate. The question then is, what is the interest which he intended to give her. It is not, and cannot be pretended that the wife was to take these slaves merely in trust, to be disposed of by her for the family, or for any particular member or members of it, whom she might select. That would be wresting the language used from its ordinary signification, and would moreover be opposed to the settled construction of such modes of expression. There is nothing imperative in the language which is essential to the creation of a trust. The wife might possibly be held to have a power over the property, but by no means to hold it merely in trust. The distinction between a power and a trust is marked and obvious. “ Powers (as Lord C. J. Wilmot said) are never imperative, they leave the act to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted.” Wilm. 23; Sug. on Powers, page 100 of the Law Library edition, volume 6. The bequest-to the wife, then, must be a life-estate, with the power of appointment, or an absolute interest, with an attempted restriction of her power of disposing of the slaves. Now, it is manifest, that a life-estate is
 
 not
 
 given in express terms, but, on the contrary, the expression
 
 “
 
 to have and to hold and expose of, (moaning obviously to dispose of) at her own discretion while she lives, and at her death,” gives her an absolute interest, unless such interest
 
 is
 
 cut down to a life-estate by the remaining words of the
 
 *466
 
 clause “so as not to be disposed of out of the family Maskelyne v. Maskelyne, Ambl. Rep. 50 ; Pace v. Archbishop of Canterbury, 14 Ves. jr., 370, and other cases collected in Sug. on Powers, page 144 of the Law Library edition, volume 5. The question, then, is narrowed down to this, Whether these words can have that effect ? Chancellor Kent, in a very able opinion, delivered in the Court of Errors, for the State of New York, in the case of Jackson v. Robbins, 16 John. Rep. 537, says at page 587, “ We may lay it down as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee, and the only exception to the rule is where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and marked gift of a power of disposition of the reversion. The distinction is carefully marked and settled in the cases.”
 

 Again, this same very learned Judge says, in the 4th volume of his Commentaries, pages 35 and 586: “If an estate be given to a person, generally or indefinitely, with a power of disposition, it carries a fee, unless the testator gives to the first taker an estate for life only, and annexes to it a power of disposition of the reversion. In that case, the express limitation for life will control the operation of the power, and prevent it from enlarging the estate to afee.” Those rules are laid down after an elaborate review of English and
 
 American
 
 authorities, in some of wdiich it was said, that there was, in this respect, no distinction bi tween real and personal estate, and we have no doubt as to their correctness. They establish, very clearly, that the wife, in our case, took an absolute estate in the slaves Richard and Pinckney, by force of the power given to her to dispose of them at her discretion. The enquiry remains, what is the effect of the words, “So as not to be disposed of, out of the family?” We hold them to be repugnant to the absolute estate given in the preceding part of the clause, and there
 
 *467
 
 fore void. In this, we believe, that we are supported by principle as well as by authority. The words, if operative at all, must convey either a remainder or an executory devise. They cannot convey a remainder, because there cannot be anything to remain after an absolute estate in the property. There cannot be an executory devise, for the reason, that an executory devise cannot be destroyed or prevented from taking effect, by any disposition of the property, made by the first taker, and that would be directly inconsistent with and repugnant to the power given to the wife to dispose of the slaves at her discretion. In support of these positions,^the case of JacksoN v. Robbins, above referred to, may be relied upon. In that case, the question arose upon a clause in the will of Lord Stirling, by which he devised and bequeathed “ all his real and personal estate whatsoever to his wife Sarah, to hold the same to her, her executors, administrators and assigns; but, in case of her death, without giving, devising and bequeathing by will or otherwise selling or assigning the estate, or any part thereof, then he devised all such estate, or all such parts thereof as should remain unsold, undevised or unbequeathed, unto his daughter, Lady Catharine Duer, to hold the same to her, her executors, administrators and assigns.”
 

 The Chancellor Kent, in discussing the question, whether the limitation to the daughter was good, said: “ This limitation over must be either as a remainder or as an executory devise, and it is impossible that it should be either. Upon every known principle of law, no remainder can be limited after an estate in fee, and therefore, if a devise be to A. and his heirs, and if ho dies without heirs, then to B., the remainder is repugnant to the estate in fee, and void. Preston v. Funnel, Willes’ R. 154; Pell v. Brower, 2nd point Cro. Jac. 590. Nor can the limitation over operate by way of executory devise, because the power to dispose of the estate, by will or deed, which Loid Stirling gave to his wife, is fatal to the existence of that species of interest. It is a clear and settled rule of law. that an execu-tory devise cannot be prevented or defeated by any alteration
 
 *468
 
 of the estate, out of which, or after which, it is limited, or by any mode of conveyance. It cannot be created, and it cannot live, under such a power in the first taker. These limitations (says Mr. Justice Powell, in Satterwood v. Edge, 1 Salk. Rep. 229,) make estates unalienable ; for every executory devise is a perpetuity, as far as it goes: that is to say, it is an estate unalienable, though all mankind join in the conveyance ; (See also 2 Fearn, p. 51, by Powell; 2 Saun., 388th note.) Wo aro obliged, therefore, to have recourse to the explicit and settled doctrine, in the cases of the Attorney General v. Hall, Fitzg. Rep. 3 14; Ide v. Ide, 5 Mass. Rep, 500 ; and Jackson v. Bull, 10 John Rep. 19, and say, “that an absolute ownership or capacity to sell in the first taker, and a vested right, by way of executory devise, in another, which cannot be affected by such alienation, are perfectly incompatible estates, and repugnant to each other, and the latter is to be rejected as void.”
 

 The principles thus clearly enunciated, and shown to be supported by the highest authority, apply directly to the case before ua, and are decisive of it. The testator intended, undoubtedly, as we think we have proved, to give his wife an interest in the slaves in question, greater than a life estate. The words which he used, did give to her an absolute estate, to which the restrictive expression is repugnant, and must therefore be declared to be void. The consequence is, that the slaves in question, not having been disposed of by Mrs. Newland, during her life, or at her 'death, formed a part of her estate, to which her administrator was entitled. The judgment must be affirmed.
 

 Judgment affirmed.