CASE 11—ACTION BY BISHOP CLAY, &C., AGAINST ANDERSON CHENAULT, JR., FOR A DIVISION OF LAND INVOLVING CONSTRUCTION OF THE WILL OF ANDERSON CHENAULT, SR.—MARCH 10.

# Clay and Others v. Chenault.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF'S APPEAL. AFFIRMED.

WILLS—ABSOLUTE POWER OF DISPOSITION CREATING FEE—VOID LIMITATION OVER.

Held: Where a testator devised land to his son, with power to sell and convey, without any requirement as to the reinvestment of the proceeds, but providing that if the proceeds should at the time of the son's death be invested in other land, and he should die without descendants, then such land should revert back and become a part of testator's general estate, the son took the fee; the limitation over after the absolute power of disposition was given being void.

TYLER & APPERSON FOR APPELLANTS.

1. The provision in the will of Anderson Chenault, Sr., in controversy, is as follows: "I own 275 acres of land, known as the Peters' farm, and lands adjoining, which tract of land I give and

| 108 | 77 |
| 136 | 698 |

| 108 | 77 |
| f132 | 239 |
| 132 | 287 |
| d132 | 292 |
| f132 | 432 |
| 132 | 786 |

bequeath, equally and jointly, to my two sons, Waller and Anderson, and for which I charge them $66.66 2-3 per acre, and they must account for same, and be charged in the settlement of my estate."

"I reserve the right to require them, if they sell said land, to reinvest the proceeds in other lands as I may direct, but if at the time of the death of any of my children, they, or any of them, shall leave no child or descendants, then the land, and also any personal property I have devised to them, which they have not then received, is to revert back and become part of my estate, and such property as may revert back, I devise, in equal proportions, to my children then living, and the descendants of such as may be dead; the descendants of those dead shall take the portion their parent would have taken if alive. I do not mean, however, to prohibit my sons Waller and Anderson, or either of them, from selling the land I have devised to them, but I here give to each of them the right to sell and convey his part of said land, and make the purchaser a good title thereto, but if the proceeds arising from the sale of the land devised to them shall at the time of the death of either of them, be invested in other lands, and they or either of them shall leave no child, children or descendants then alive, then the lands in which such proceeds is invested, shall revert back and become a part of my general estate, and be divided among my children who are then living, and the descendants of such may be dead, the descendants of those dead to take the part their parent would have received, if living.

2. This creates a defeasible fee with a power of disposition that has never been exercised, and the interest of Waller Chenault, in the 275 acres, reverted back and became at his death a part of the general estate of the testator, to be divided as directed by the tenth clause of his will. Crozier v. Cundall, 18 Ky. Law Rep., 116; Collins, &c., v. Thompson, &c., 19 Ky. Law Rep., 1194; Hood v. Dawson, 17 Ky. Law Rep., 880; Cleveland v. Cleveland, 5 Law Rep., 56; Anderson, &c., v. Hall's Adm'r, 81 Ky., 91; Graham v. Botner, 18 Ky. Law Rep., 637; McCallister v. Bethel, 16 Ky. Law Rep., 775; McCullough's Adm'r v. Anderson, &c., 11 Ky. Law Rep., 939; Thackston v. Watson, 84 Ky., 206 (8 Ky. Law Rep., 193).

W. S. PRYOR FOR APPELLANT.

1. It is apparent from the will that the testator intended to preserve his estate in his family and prevent the transfer of the realty by those who died childless.

2. The land was never sold. Waller died childless, leaving a will in which he devised to his brother Anderson Chenault, Jr., an estate for life in one-half of the 275 acres.

Clay, *et. als.* v. Chenault.

W. G. DEARING FOR APPELLANT.

1. The testator plainly shows by his will, that so long as the specific property can be traced, and there is a failure of children on the part of Waller Chenault, the property should revert. Wills v. Wills, 85 Ky., 496; Wren v. Hynes' Admr., 2 Metcalfe, 129, and cases cited by co-counsel.

ED C. O'REAR & ROBT. H. WINN FOR APPELLEE.

1. Had there been no second clause of the codicil, giving an express power of disposition, Waller dying without issue, the defeasance would have occurred. But this superimposed power of alienation, raised the defeasible fee into an absolute fee. Jackson v. Robbins, 16 Johnson, 537; McCullough's Adm'r v. Anderson, 90 Ky., 126; Van Horne v. Campbell, 100 N. Y., 287; S. C. 53 Am. Reps., 166; Sec. 2342, Ky. Stats.

JOHN G. WINN FOR APPELLEE.

1. A general devise, with words of survivorship, to take effect immediately upon testator's death, is to be construed as referring such words to the time of the testator's death. Wills v. Wills, 85 Ky., 486; Carpenter v. Hazelrigg, 20 Rep., 231; Wren v. Hynes' Admr., 2 Met., 129; Trabue v. Terry, 10 R., 345; Martin v. Renaker, 10 R., 469; Trice v. Slaughter, 11 R., 678; Jarman on Wills, vol. 1, 171 and 793 (marginal); Same, vol. 2, marginal p. 650.

Waller and Anderson, Jr., therefore, surviving their father, took the property devised to them by him, in fee simple.

2. The devise to Waller and Anderson was a general devise, in words sufficient to carry the fee simple; their power of disposal was absolute, free from any requirement to reinvest; and, therefore, they took the land devised to them in fee simple. Kent's Com., vol. 4, pp. 271 and 536 (marginal); Jackson v. Bull, 10 Johns., 18; Jackson v. Robbins, 16 Johns., 537; Ide v. Ide, 5 Mass., 500; Melson v. Cooper, 4 Leigh, 408; Smith v. Starr, 31 Am. Dec., 498; VanHorne v. Campbell, 53 Am. Rep., 166; Trustees v. Kellogg, 16 N. Y., 83; Howard v. Carusi, 109 U. S., 725; Ball v. Hancock, 82 Ky., 113; Caleb v. Field, 9 Dana, 346; Barth v. Barth, 18 R., 840; McCullough v. Anderson, 90 Ky., 126; and Payne v. Johnson, 95 Ky., 175.

3. The ulterior limitation, after a general devise with unrestricted power of alienation, is absolutely void; and the first fee remains, just as if no further limitation had been attempted.

Citations under No. 2: Lewis Perpetuities, 657; 2 Washburn Real Property, 360.

4. The law, in the interest of the public, favors those estates which are fixed, determined, vested.

Clay, *et. als.* v. Chenault.

Opinion of the court by Judge Guffy—Affirming.

Anderson Chenault, Sr., died in Montgomery county, after first making and publishing his last will, which was duly probated. Among the devisees were Waller and Anderson Chenault, Jr., to whom, among other things, were devised 275 acres of land in equal shares. Some time after the death of the testator, Waller Chenault died without having sold his interest in the land devised; but by his will he devised said land to his brother for life, with remainder to all the descendants of the testator, Anderson Chenault, except that the share that would otherwise go to W. O. Chenault should go to his children. After the will of said Waller was probated, the appellants instituted this action, seeking a division of the land so devised to appellee, claiming that said land descended to them, and appellee. The appellee, by his answer, claimed to own said land for life, under the will of his brother, Waller, and set up and pleaded said will as defense to appellants' action. Appellants demurred to the answer, as well as moved to strike out so much of the same as pleaded the will of said Waller, which demurrer and motion was overruled by the court; and, appellants failing to plead further, their petition was dismissed, and to reverse that judgment this appeal is prosecuted.

It is the contention of appellants that under the will of Anderson Chenault, Sr., Waller took, at most, only a defeasible fee in the land in contest; that the will of his father provided that if said Waller died without living descendants, said land reverted to the other heirs of said Anderson. It is the contention of appellee that Waller was invested with the fee-simple title to the land. Appellee also contends that the reference to the death of Waller in

the will of his father referred to his death prior to the death of the testator.

It will be seen, from the will of Anderson Chenault, which is exceedingly voluminous, that he devised certain property to his wife for life, and also to his daughters for life, with fee to their descendants, if any, and, if none, their shares to revert or pass to his other children. The same provisions, in substance, were made concerning the property devised to his son W. O. Chenault. So much of the will as seems to have any bearing upon the question at issue herein is hereinafter copied. The first reference is item 5, which is as follows: "I own about 275 acres of land, which embraces what is known as my 'Peters' Farm,' and my land adjoining it, which tract of 275 acres lies in the vicinity of what is known as 'Wilkerson's Blacksmith's Shop,' and which tract of land I give and bequeath equally and jointly to my two sons, Waller Chenault and Anderson Chenault, Jr.; and I charge them for said land at the rate of sixty-six dollars and sixty-six and two-thirds cents ($66.66 2-3) per acre, and for which land at said price per acre my said two sons must be charged and account for in the settlement of my estate; but I reserve the right hereafter, if I think proper to do so, by a codicil here to require my said sons, if they sell said land, to reinvest the proceeds in other lands as I may direct. . . ."

Item 10 reads as follows: "If at the time of the death of any of my children they or any of them shall leave no child, children, or descendants of theirs then alive, then the land, and also any personal property I have devised them which they have not then received, is to revert back to my estate and to become a part and parcel thereof; and such property as may revert back to my estate as is pro-

vided herein I give and devise in equal portions to such of my children as are then alive, and to the descendants of any that may be dead,—the descendants of those dead to take the share or part their parent would have taken if alive."

Item 12 reads as follows: "The land I have devised to my sons, Waller and Anderson, they may hold jointly or divide it between them equally according to its quality, quantity, and yearly value."

Item 15 reads as follows: "Whatever, if anything, the land I have given my sons, Waller and Anderson, may lack of amounting at $66 2-3 per acre to $20,720, they are to receive interest on (that is, on the deficiency) from the date of my death until the date of the sale of the 150 acres, and this interest is to be paid out of the money arising from the sale of said 150 acres; and the charges I have placed upon the proceeds arising from the sale of said 150 acres are all to be paid before an equal division of the balance of said proceeds takes place between all my children."

On April 14th the testator executed a codicil of considerable length to his will theretofore made. Item 2 of the codicil reads as follows: "I have recently had some trading and dealing with my two sons, Waller and Anderson Chenault, Jr., and in these transactions I have given and advanced to them jointly one hundred and eighty-two dollars and fifty cents ($182.50), and with which sum I charge them, and they must account for it in the settlement of my estate; and, if, as is named in the 15th clause of my will, there may be any deficiency as therein indicated, then the above $182.50 to be applied to its extent in making up such possible deficiency, as is also any other sums that I may pay, give, or advance to them hereafter, and for which I may hold their receipt, and these advancements are to be payments at the time they are respectively made on said

possible deficiency, but no interest is to be computed on them, but they are to be deducted as of the date of my death from such deficiency; but, if it shall turn out that there is no deficiency, then they are to be charged with and account for said advancement, or for any overplus that said advancement may make in the aggregate over and above said possible deficiency. By the tenth clause of my will I do not mean or intend to prohibit my two sons, Waller and Anderson Chenault, Jr., or either of them, from selling the land I have devised to them, but I here give them or either of them the right, privilege, and power to sell and convey his part of said land, and make the purchaser a good title thereto; but if the proceeds arising from the sale of the land devised to them by me or to either of them shall at the time of the death of them or either of them be invested in other lands, and they or either of them at the time of their death shall leave no child, children, or descendants then alive, then the said land of both or either one in which said proceeds are invested is to revert back and become a part of my general estate."

Section 2342, Kentucky Statutes, which is an exact copy of section 7, article 1, chapter 63, of the General Statutes, reads as follows: "Unless a different purpose appears by express words or necessary inference, every estate in land created by deed or will, without words of inheritance shall be deemed a fee-simple or such other estate as the grantor or testator had power to dispose of." It will be seen that item 5 is an absolute devise of the land in question,— coupled, however with a reservation of power by the testator in a codicil to require the devisees, in the event of a sale of the land devised, to invest the proceeds in other lands in such manner as the testator might direct. This reserve power seems never to have been exercised, but at most only a direction given as to the land in the

event a sale and reinvestment should be made by the devisees. It is provided in item 10 that "if, at the time of the death of any of my children, they shall leave no descendants alive, then the land, and also any personal property I have devised them which they have not then received, is to revert back to my estate and become a part and parcel thereof. . . ." It is argued for appellee that this provision has reference to the death of the devisee before the death of the testator. The above provision of the will is referred, to in item 2 of the codicil, and the meaning thereof to some extent explained; and said devisees are clearly authorized to sell or pass a perfect title to. the land in question, with the further provision that if the proceeds arising from such sale shall at the time of the death of either be invested in other land, and the devisee shall have no descendants, then the said land in which said proceeds are invested is to revert back and become a part of the general estate.

It will be seen from the foregoing that the said devisees were invested with an unconditional power of sale and conveyance, without any requirement as to the reinvestment of the proceeds, and, beyond question, they could hae sold the land and passed a perfect title thereto, and used the proceeds for any purposes whatever, and in no event could any remainder ever be claimed unless the proceeds were then invested in land at the time of the death of the devisee. It will be seen from the item in question that the provision as to the remainder over in the event of the death of the devisee without issue is specifically confined to the land in which the proceeds of the land devised should then be invested.

It is, however, the contention of appellee that the testator invested Waller Chenault with the fee simple, and

that any attempt to control or limit the disposition of the land is repugnant to the fee, and therefore invalid, and we are referred to various authorities in support thereof. It is said in section 270 (12th Ed.) 4 Kent. Comm., that: "At law the grant of a term to a man for life would have been a total disposition of the whole term. Nor can an executory devise or bequest be prevented or destroyed by an alteration whatsoever in the estate out of which, or subsequently to which, it is limited. The executory interest is wholly exempted from the power of the taker. If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A. in fee, and if he dies possessed of the property, without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should leave, or without selling or devising the same,—in all such cases the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise. because the limitation is inconsistent with the absolute estate or power of disposition expressly given or necessarily implied by the will." The question under consideration seems to have been decided in Jackson v. Bull, 10 Johns. 19. It appears that Charles Bull by his last will devised to his son Moses and to his heirs and assigns, forever, certain property. In another part of the will, it is provided as follows: "In case my son, Moses, should die without lawful issue, the said property he died possessed of I will to my son, Young, his lawful issue," etc. After the death of the testator, Moses entered into the possession of the property devised to him, and died in possession thereof, without lawful issue, and devised his property to his wife, sister and half-brother. The court said in the opinion delivered: "The limitation over must be con-

sidered void, as applying to an indefinite failure of issue, by which the devisee would take an estate tail (with us is turned into an estate in fee), and is a question we need not now discuss; for it is void on another ground, as being repugnant to an absolute control over the estate which the testator intended to give." The court cites with approval the case of Attorney General v. Hall, Fitz., 314; also, Ide v. Ide, 5 Mass., 500. The same question was elaborately discussed and decided by the supreme court of judicature of New York in Jackson v. Robins, 16 Johns, 582 et seq. It will be seen from an examination of the opinion that, in addition to a consideration of the validity of certain sales made under execution, it was deemed necessary to construe the will of Lord Stirling. After discussing at length the validity of the sales under execution, upon grounds other than the meaning of Lord Stirling's will, the court said:

"If Lady Stirling took an estate in fee under the will of Lord Stirling, then at her death Mrs. Neilson would have been entitled, as one of her heirs, to an equal, undivided moiety of all her interest in the premises. But, if Lady Stirling took a fee, then an adverse possession commenced when Harlow entered into possession under John Taylor, in 1794, and the statute of limitation began to run against her, for she was then under no disability. When the statute once begins to run, it continues to run until the twenty years have expired, and therefore not only Lady Stirling, but all who claim under her by will or by inheritance, were bound in 1814, and before the commencement of this suit. The question, therefore, as to what estate Lady Stirling took under the will, becomes material only by its influence upon this other question of the statute of limitations; and it was quite entertaining to see how indus-

Clay, *et als.*, v. Chenault.

triously and profoundly the counsel were obliged to labor
upon the one question merely to bring it to bear upon the
other.   This question is also supposed to have been de-
cided by this court in the former cause of Jackson v. De-
lancy, 13 Johns., 537.   But I apprehend that the decision
of this court in that case does not rest at all upon this
point, and I barely mentioned, in the opinion which I then
delivered, that Lady Stirling did take a fee under Lord
Stirling's will, and that the devise over to his daughter,
Catherine Duer, was not a good limitation by way of ex-
ecutory devise.   J relied for this upon the decision of the
Supreme Court of Jackson v. Bull, 10 Johns., 19, and ob-
served that nothing had been urged to show why that de-
cision was not to be regarded as correct.   It is that de-
cision, then, and not the one in this court, which I think
governs this question.   If that decision be sound, then,
according to the principle of it, Lady Stirling did take
an estate in fee; and, notwithstanding all that has been
said or suggested to the contrary in the court below (vide
Page v. Lennox, 15 Johns., 171, 172), I am obliged still
to be of the opinion that it was a well-founded decision.
Suffer me for one moment to re-examine its foundations.
'*Redit labor actus in orbem.*'   The testator in that case de-
vised to his son Moses, and to his heirs and assigns for-
ever, a lot of land, and then added that, in case his son
should die without lawful issue, the property he died pos-
sessed of he gave to his son Young Moses.   The son did
die in possession of the property, and without lawful
issue; but he devised by will to his wife and others, under
whom the plaintiff claimed, in opposition to the devise to
the other son.   The counsel for the plaintiff contended
that the limitation over by way of executory devise was
void, because repugnant to the absolute power of disposal

Clay, *et als.*, v. Chenault.

given by the will to Moses, who was thereby enabled to defeat it. The court unanimously acceded to that principle, and cited authorities in support of it, and gave judgment for the plaintiff. The first case that the court then relied upon was that of Attorney General v. Hall, Fitzg., 314, decided in 1731 by Lord Chancellor King, assisted by the master of the rolls and Chief Baron Reynolds. Hall, the testator, owning real and personal estate, gave it by will to his son and to the heirs of his body, and, if he should die leaving no heirs, then he gave so much of the real and personal estate as his son should be possessed of at his death to the Goldsmiths' Company, at London, for charitable purposes. A limitation over for such a purpose had strong claims upon the protection a court of chancery; and I hope that I may be excused for making, as a passing remark, that the will awakens interesting associations from another circumstance, which is that Sir Isaac Newton was one of the executors. The son alienated the real estate by a common recovery, and bequeathed the personal estate by will to his wife, and died without issue. The question arose between the wife, claiming under the will, and the Goldsmiths' Company, claiming by virtue of the limitation over on the event of the son dying without issue. The case was fully and ably argued, and there was no distinction made between the real and personal estate as to the validity of the limitation over. The court were unanimously of the opinion that the Goldsmiths' Company had no valid claim, and the limitation over was void, because the absolute ownership had been given to the son; for the property was given to him and the heirs of his body, and the company were to have no more than he should leave unspent, and therefore he had a power to dispose of the whole. The words that gave

him an estate tail in the land gave him the entire property
in the personal estate, and nothing remained to be given
over by the testator. The point of that case, then, was
that where an estate is given to a man and the heirs of his
body, with a power of disposal, at his own will and pleas-
ure, it carries with it an absolute ownership, repugnant
to any limitation over, and destructive of it. The court
did not make any distinction between the real and per-
sonal estate, and say that the limitation over was good as
to one and void as to the other. They said generally that
the limitation over in the will was void, because the testa-
tor gave the son an unqualified power to spend the whole.

"The other case that the court relied upon in Jackson v.
Bull was Ide v. Ide, 5 Mass., 500, decided in the supreme
court of Massachusetts in 1805. There the testator gave
by will to his son, and to his heirs and assigns, forever,
certain real and personal estate, and then added that, if
the son died without heirs, the estate which he should
leave was to be equally divided between two other per-
sons. The son did die without leaving heirs, and the ques-
tion arose between those claiming the real estate under
the limitation over and those claiming it under a
conveyance from the son. The opinion of the court was
delivered by the late Chief Justice Parsons, whose char-
acter as a lawyer and judge is held in universal reverence.
He cited and relied upon the case of Attorney General v.
Hall, and said, that: 'Whenever it is the clear intention
of the testator that the devisee should have an absolute
property in the estate devised, a limitation must be void,
because it is inconsistent with the absolute property sup-
posed in the first devisee. And a right in the first devisee
to dispose of the estate devised at his pleasure, and not a
mere power of specifying who may take, amounts to an

unqualified gift.' He then applied the rule to the case before him, and observed that 'the absolute, unqualified interest in the estate devised was given to the son, which was inconsistent with the limitation over, and consequently by the limitation was void.' The error in the case of Jackson v. Bull, said the learned counsel, was in applying the English case to the real estate, when it was applicable only to chattels. But the supreme court of Massachusetts were then in the same error, for they equally so applied it. 'The limitation over,' says Chief Justice Parsons, 'makes no distinction between the real and personal estate, operating only on such part of either as the first devisee should have.' In both of those cases the devise was of real and personal estate in the same sentence, and the same limitation over was created as to each; and neither the English nor the Massachusetts court admitted any difference in the rule of construction, or in the operation of the power of alienation, whether applied to the limitation of the real or of the personal estate.

"I do not know that either of those two last decisions has ever been questioned in any court or by any author. They were pronounced by the highest judicial authorities, and Lord Hardwicke, (1 Ves. Jr., 10), gives his sanction to the accuracy of the English case. Beachcroft v. Broome, 4 Term R., 441, decided in King's Bench in 1791, is in confirmation of the doctrine of the prior case. That was the case of a devise to B and his heirs, and if he die without having settled or otherwise disposed of the estate, or without leaving issue of his body, then the devise over. B sold the premises in fee, and died without issue, and the question was whether the purchaser took an estate in fee, and the King's Bench held clearly that he did. The decision is entirely conformable to the doc-

Clay, *et als.*, v. Chenault.

trine in Attorney General v. Hall and Ide v. Ide and
Jackson v. Bull; but a single expression of Lord Kenyon
is seized upon, and great reliance was placed upon it by
the counsel for the plaintiff in this case. Lord Kenyon
said (and it must have been in loose conversation on the
bench) that, if the case had turned on the question whe-
ther that was an estate tail in B, he should have thought
it extremely clear that on failure of the first limitation
the second ought to have taken effect as an executory
devise. Perhaps the meaning of Lord Kenyon is not to
be clearly understood. It was an observation not re-
quired by the decision nor applicable to the point; but,
let it mean what it may, are we to permit such a loose
remark to be of any weight or consideration, in opposi-
tion to the deliberate and solemn judgments of the
courts? It is enough, I apprehend, merely to mention
such a dictum, and then to pass it by in silence.

"If we now apply these cases to the will of Lord Stirl-
ing, we can not but be struck with their perfect and con-
trolling application. He does, in the first place, devise
and bequeath unto his wife, Sarah, all his real and per-
sonal estate whatever, to hold the same to her, her exe-
cutors, administrators, and assigns. This was a gift in
fee. The word 'estate,' in a will, carries the land and all
the testator's interest in it. It is the *genus generalis-
simum*, said Lord Holt, (Countess of Bridgwater v. Duke
of Bolton, 1 Salk., 236), and includes all things, real and
personal. The words 'all his estate' are, in a will, de-
scriptive of his fee. And in a subsequent case (Barry v
Edgeworth, 2 P. Wms., 523), the Master of the Rolls, re-
ferring to this opinion of Holt, said that the law was
then settled on the point, and that the word 'estate' com-
prehended not only the thing, but the interest in it, and,

if it had been agreed and settled to convey a fee in a will, it would be dangerous to refine upon it. So, again, Lord Mansfield observed (Roe v. Harvey, 5 Burrows, 2638), that the word 'estate,' in a will, carried everything, unless tied down by particular expressions. And in a subsequent case (Holdfast v. Martin, 1 Term R., 411) Mr. Justice Buller said that the word 'estate' was the most general word that could be used, and the words of restraint must be added to make it carry less than a fee. And, lastly (for I will not fatigue myself with further citations on the point), Mr. Justice Patterson, of the Supreme Court of the United States, declared (Lambert v. Paine, 3 Cranch, 134, 2 L. Ed., 377), that the word 'estate' was the most general, significant, and operative word that can be used in a will, and it comprehends both the land and the inheritance. We may say, then, that Lord Stirling, by the first part of his will, gave an estate in fee to his wife. So he, also, repeated this gift of a fee, by the next clause in the will, when he admits expressly that she has the power and the right to give, devise, and bequeath, or sell or assign, the estate, or any part thereof.

This power, of itself, is an attribute of ownership, and carries with it a fee. Thus, as early as 6 Eliz., (Dalison's Rep., 58), it was held by the judges that if a man devises land to his wife, to dispose of and employ it upon herself and her son, at her pleasure, she takes a fee. So, again, Lord Coke says (Co. Lit., 96) that if a man devises land to another, to give and to sell, this amounts to a devise in fee; for, in a will, the word 'heirs' is not necessary to create an estate of inheritance. There are many other cases to the same effect, which I need not particularly mention (Moore, 57; 2 Atk., 102; Jackson v. Coleman, 2 Johns., 391); and we may lay it down as an in-

Clay, *et als.*, v. Chenault.

controvertible rule that where an estate is given to a person generally or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule is, where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal. In that particular and special case the devisee for life will not take an estate in fee notwithstanding the distinct and naked gift of a power of disposition of the reversion. This distinction is carefully marked and settled in the cases. Tomlinson v. Dighton, 1 Salk., 239, 1 P. Wms., 149; Crossling v. Crossling, 2 Cox, Ch., 396; Reid v. Shergold, 10 Ves., 370; Goodtitle v. Otway, 2 Wils., 6.

"The question then occurs, was the limitation over to Mrs. Duer valid, after the creation of such an estate in fee? The words of the will were that 'in case of the death of his wife without giving, devising, and bequeathing by will, or otherwise selling or assigning the estate, or any part thereof, he doth give and devise all such estate as should so remain unsold, undevised, or unbequeathed to his daughter, Lady Catherine Duer,' etc. This limitation over must be as a remainder, or as an executory devise, and it is impossible that it should be either, upon any known principles of law. No remainder can be limited after an estate in fee, and therefore if a devise be to A and his heirs, and, if he die without heirs, then to B, the remainder is repugnant to the estate in fee, and void. Preston v. Funnell, Willes, 164; Pells v. Brown, (Cro. Jac., 590, point 2.) Nor can the limitation over operate by way of executory devise, because the power to dispose of the estate by will or deed, which Lord Stirling gave to his wife, is fatal to the existence of that species of interest. It is a clear and settled rule

of law that an executory devise can not be prevented or defeated by any alteration of the estate out of which or after which it is limited, or by any mode of conveyance. It can not be created and it can not live under such a power in the first taker. 'These limitations,' says Mr. Justice Powell (Scatterwood v. Edge, 1 Salk., 229), 'make estates unalienable, for every executory devise is a perpetuity, as far as it goes; that is to say, it is an estate unalienable, though all mankind join in the conveyance.' Vide, also, 2 Fearne, Rem., p. 51, by 'Powell; 2 Saund., 388d, note. We are obliged, therefore, to have recourse to the explicit and settled doctrine in the cases of Attorney General v. Hall and of Ide v. Ide and of Jackson v. Bull, and say that an absolute ownership, or capacity to sell, in the first taker, and a vested right by way of executory devise in another, which can not be affected by such alienation, are perfectly incompatible estates, and repugnant to each other, and the latter is to be rejected as void. Lord Stirling clearly intended to give his wife an estate in fee. The words amount to demonstration of that intention. If she sold the land, she was not accountable for the proceeds. She could not be chargeable with waste, and she might mortgage or incumber the land, for that is included in the right to give and sell and assign. And when he attempted to ingraft an executory devise or limitation over upon a fee, with such absolute power of control, he did what was incompatible with his other and principal intention, and which the courts must, of necessity, reject as repugnant and void. There is not a case to be found in which a valid executory devise was held to subsist under an absolute power of alienation in the first taker. I have looked at the cases so industriously collected by the plaintiff's

counsel, and there are none of them that reach this point. All executory devises may be said, in some degree, to depend upon the will or discretion of the owner of the precedent estate. If a devise be to A in fee, but, if he die without issue living at his death, then over to B, it is his volition and power (morally speaking) not to marry, or to marry and have issue, and so avoid the devise over. So, if the limitation over be made to depend upon the contingency that the first taker marry without the consent of B or marry a prohibited person, he may undoubtedly avoid marrying without the requisite consent, or avoid marrying against the prohibition, and so defeat the limitation. But these distinctions have nothing to do with the simplicity and good sense of the general rule we are discussing. The first taker, in these special cases, has not an absolute discretion and free agency, within the meaning of the rule. The sound doctrine on the subject is that an executory devise, under the salutary checks provided for it, is a stable and unalienable interest, and the first taker has only the use of the land or chattel pending the contingency mentioned in the will, and he can not convert the property to his own use, and defeat the subsequent estate by a voluntary alienation. This is the rule for which we contend, and it was not so with Lady Sterling. She could give and devise and she could sell and assign the estate when and to whom, and for what purpose, she pleased. She was a free moral agent, and an absolute and independent owner, in respect to the estate. This is what we understand by a right incompatible with an executory devise, and this is what we are to understand by the books when they speak of a limitation over as being void, because inconsistent with such an absolute power and dominion in fee.

Clay, *et als.*, v. Chenault.

"But it is time that this discussion should draw to a close. The result of my inquiry is a belief that the defendant has a good title under the judgment and execution, and that, if he had not, he is nevertheless, protected by the statute of limitation, because Lady Stirling was seised in fee, so as to enable the statute to run against her, when the adverse possession commenced in 1794. Upon either ground, if correct, the judgment must be affirmed. During the examination of this subject I have not been insensible to the weight of the inquiry, and more especially as one of the judges of the court below seems to think the law in favor of the claim. The counsel for the plaintiff, and one of them a son of a lessor of the plaintiff, have, indeed, labored the points in their argument annexed to the case, as well as at this bar, with a diligence and painful anxiety, and, no doubt, with a sincere conviction, that has excited my sympathy. The descendants of Lord Sterling appear to feel that a rich inheritance has been injuriously snatched from their enjoyment, but I think it was fairly lost by the inability or neglect of their ancestor or his representatives to redeem the incumbrance. And, if the law was with the plaintiff, would not our sympathies be as properly directed to this defendant, whose father was a *bona fide* purchaser under the execution, and cultivated the premises as his own for twenty years, and died in possession, and transmitted the fruit of his labor to his son? The truth is that judges are bound to declare the rules of law strictly, without regard to consequences. They must follow the conclusions of the understanding, and not the dictates of the heart. If the argument on the part of the plaintiff has made a more favorable impression upon others than it has upon me, I shall be perfectly contented. I am, how-

ever, obliged to say, as the case strikes me, that the law is with the defendant, and that the judgment ought to be affirmed. This being the unanimous opinion of the court, it was thereupon ordered, adjudged, and declared that the judgment of the supreme court be affirmed, and that plaintiffs in error pay to the defendant in error fifty dollars and fifteen cents for his costs and charges in and about his defense in this court, and that the record be remitted," etc.

The same question was decided by the court of appeals of New York in Van Horne v. Campbell, 100 N. Y., 287, 3 N. E., 316, 771. We quote as follows:

"The precise question presented, therefore, for our determination, is whether an executory devise can be made to depend on the nonexecution by the first taker of an absolute, beneficial, disposing power vested in him by the will creating the limitation, or, in other words, whether there can be a valid executory devise where the executory limitation is conjoined with an absolute power in the primary devisee to defeat and cut off the future estate or interest by alienation of the entire fee in his lifetime, and whether it makes any difference, as to the rights of the ulterior devisee, whether the power has or has not been exercised. This question we may reasonably expect to find answered by the authorities, and, as we understand them, it is answered by an unbroken line of authorities in this State, and almost uniform course of decision elsewhere, against the validity of such limitation. If it appeared that the testator intended to confer upon the first devisee an absolute power of disposition, and in his will he afterwards made a gift over, the two dispositions can not stand together. The absolute power of disposition

shows that he intended to give an unqualified title to the first devisee, and it is in the nature of such title that the property, if not alienated by the owner, shall descend to the heirs if it be real estate, or go to the next of kin if it be personal. The gift over is repugnant to this quality of absolute ownership, and it is consequently void. It will be noticed that Judge Denio regarded the rule stated as alike applicable to devises of real and personal property. Tyson v. Blake, 22 N. Y., 563, was the cause of an executory bequest with a limitation over on the death of the primary legatee without issue, and is only important in the discussion as containing an express recognition of the doctrine of the prior cases that a limitation over is incompatible with an absolute disposing power in the first taker. Terry v. Wiggins, 47 N. Y., 512, was an action of ejectment, the title depending upon a devise in a will which took effect in 1862, of certain land to the testator's wife, for 'her own personal and independent use and maintenance,' with power to sell the same, and a devise over after her death of any residue, etc. The court construed the will as giving the wife a life estate only, with a limited power of disposition, and sustained the devise over on this ground. Allen, J., said, 'The power of disposition is not absolute, so as to bring it within the rule making all devises with absolute power of disposition in the devisee, gifts in fee.' And he further said that, if the devise to the wife had been a fee, the claim that the devise over was repugnant and void would have been well founded. The learned judge also referred to certain provisions of the Revised Statutes, and remarked that it was not material to decide whether the limitation over was a good executory devise at common law. Smith v. Van Ostrand, 64 N. Y., 278, involved the

construction of a will which, as construed, gave to the
testator's widow a sum of money during life or widow-
hood, with power to use so much of the principal as might
be necessary for her support, with remainder to her
children. The court sustained the validity of the gift in
remainder on the ground that the power of disposition
was not absolute, but limited and conditional. Judge
Rapallo said, 'The cases sustain the proposition that
where an absolute power of disposal is given to the first
legatee a remainder over is void for repugnancy,' and
adds: 'But they also recognize the principle that, if the
*jus disponendi* is conditional, the remainder is not repug-
nant. The power of disposition in the present case is
only for a special purpose,—the support of the widow.'
Campbell v. Beaumont, 91 N. Y., 464, was an action for
the construction of a will of real and personal estate,
which took effect in 1876. The principal question was
whether there was a valid limitation over of the real and
personal estate, which in the first instance was given to
the wife of the testator. The alleged limitation over
was of the property, or such portion 'as may remain,' etc.,
after the decease of the wife. The court held that upon
the construction of the whole will the fee in the real es-
tate and the absolute interest in the personal property
were given to the wife, and, further, that if the intention
of the testator was to limit the estate over, the limita-
tion was void, as repugnant to the power of disposition.
Danforth, J., said: 'The gift appears absolute and en-
tire in its terms. No child of the testator was to be
provided for, and it better accords with decisions in this
State to hold that, if a limitation over was attempted, it
is repugnant and void,'—citing Jackson v. Bull, *supra*.

"The decisions in other States upon this question are

equally uniform. Ide v. Ide, 5 Mass. 500, decided in 1809, by Chief Justice Parsons, is perhaps the earliest case in the country upon the subject. The action was ejectment. In that case the testator devised real estate to his son P. his heirs and assigns, forever, and also bequeathed to him personal estate in words denoting a absolute interest, and in a subsequent clause declared, 'And, further, it is my will that, if my son P. shall die and leave no lawful issue, what estate he shall leave to be divided between my son J. and my grandson N.,' etc. P. conveyed the land in his lifetime, and died leaving no issue. The court held that the limitation over was void for repugnancy to the disposing power, and on that ground decided the case for the plaintiff, making no reference to the fact that P. had exercised the power by a conveyance. The power of disposition was held to be implied from the words 'what estate he shall leave.' Melson v. Cooper, 4 Leigh, 408, decided by the supreme court of Virginia in 1833, was a case where a testator devised to his son W. and his heirs, and if he should die without a son, and not sell the land, then to the testator's son G. It was held, as stated in the head-note, that the devise gave W. absolute power to sell a fee simple, and, therefore, whether he sold or not, he took a fee simple, and the devise over was void. The same principle was declared in a prior case in the same State (Riddick v. Cohoon, 4 Rand., 547), where the power of disposition was held to be implied from the words 'So much of the estate as may remain undisposed of.' Cook v. Walker, 15 Ga., 459, involved the construction of a marriage settlement of real and personal property, which provided for the devolution of the property if the wife 'should die intestate without making any disposition,' etc. Lumpkins, J., in delivering

the opinion of the court, said: 'We hold it to be an incontrovertible rule that whenever an estate is given in Georgia, either by deed or will, to a person generally or indefinitely, with an unlimited power of disposition annexed, it invariably vests an absolute fee in the first taker, and that neither a remainder nor an executory devise can be limited on such an estate.' The cases of Flinn v. Davis, 18 Ala., 132, and McRee's Adm'rs vs. Means, 34 Ala., 350, declare the same rule. In Pickering v. Langdon, 22 Me., 413, it was declared that a gift over of real and personal estate, of 'what remains' on the death of the first taker, was void; and in Ramsdell v. Ramsdell, 21 Me., 288, it was declared that the doctrine of Jackson v. Bull, *supra*, was the settled law. The doctrine that an absolute power of disposition in the first taker was fatal to a limitation over was also declared by the court of North Carolina in Newland v. Newland, 46 N. C., 463, and also by the courts of Tennessee in two cases. Williams v. Jones, 2 Swan, 620, and Davis v. Richardson, 10 Yerg., 290. After a somewhat diligent examination, I have been unable to find any decision in any court in this country adverse to the doctrine declared in Jackson v. Bull, *supra*, and I think it may safely be affirmed that the doctrine of that case is the settled law of the Amercian courts. I can not better conclude this review of the American cases than by quoting the words of Chancellor Kent in his Commentaries, written long after the decisions in Johnson, *supra*, and after the close of his judicial life. Speaking of executory devises (4 Kent, Com., 270), after stating that a valid executory devise must be indestructible by the first devisee or taker, he adds: 'If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an es-

tate be devised to A in fee, and, if he dies possessed of the property without lawful issue, the remainder over, or remainder over of the property which he dying without heirs should leave, or without selling or devising the same,—in all such cases the remainder over is void as a remainder because of the preceding fee; and it is void by way of executory devise, because the limitation is incon-sistent with the absolute estate or power of disposition expressly given or necessarily implied by the will.' See also, to the same effect, 2 Washb. Real Prop., 669."

The opinion *supra* discusses the question at great length, and fully sustains the doctrine announced in Jackson v. Bull, and cites many decisions of various other courts.

The case of Ramsdell v. Ramsdell, 21 Me., 288, seems to be in accord with the cases already cited. We quote as follows from the syllabus: "The intention of the tes-tator is to have a controlling influence in the interpre-tation of the language used in the will; but if he would have that intention, when discovered, fully carried into effect, he must conform to those rules of law which es-tablish and secure the rights of property. It has be-come a settled rule of law that, if the devisee or legatee have the absolute right to dispose of the property at pleasure, a devise over is inoperative. An exception, however, to this rule is that where a life estate only is clearly given to the first taker, with an express power, on a certain event, or for a certain purpose, to dispose of the property, the life estate is not by such power en-larged to a free or absolute right, and the devise over will be good. The testator in his will provided: 'First, I give and bequeath to my beloved wife, S. C., the use during her life of all my plate and household goods; also, my personal property and real estate, except as is here-

inafter excepted.' Then made pecuniary bequests to several persons, to be paid by his executrix. Then says: 'I give and bequeath to my wife, S. C., the sum of one hundred and fifty dollars, to be paid, if she thinks proper, fifty dollars to my niece, A. R., and one hundred dollars to my nephew, B. R.; otherwise, it is to be disposed of as may best suit her.' Next: 'I give and bequeath, after the decease of my wife, all my property, if any remains, to my brothers and sisters and her brothers and sisters, to be divided equally between them.' Then: 'It is my desire that my executrix sell my farm, either at public auction or at private sale.' And made his wife executrix. It was held that by the will the widow had the absolute right to dispose of the entire property, for her own use and benefit, subject only to the payment of debts and legacies." The opinion in Smith v. Starr; 31 Am. Dec., 498, seems to fully sustain the doctrine announced in the foregoing decisions. We quote as follows from the syllabus: "Devise to use of A, with power of disposition by will, and, in default of will, then to her daughter, vests in A. an absolute estate in fee. A restriction inconsistent with a general power of disposal." In Melson v. Cooper, 4 Leigh, 408, the syllabus reads as follows: "Testator devises land to his son William and his heirs, and, if he should die without a son and not sell the land, then to testator's son George. Held, the devise gave William absolute power to sell the fee simple, and therefore, whether he sold it or not, he took a fee simple, and the devise over to George was void." In Howard v. Carusi, 109 U. S., 725, 3. Sup. Ct., 575, 27 L. Ed., 1089, the same doctrine announced in the foregoing opinions seems to have been approved. We quote the syllabus, which is as follows: "A devise of real estate and bequest of

personal property 'to my brother S. C., to be held, used, and enjoyed by him, his heirs, executors, administrators, and assigns, forever, with the hope and trust, however, that he will not diminish the same to a greater extent than may be necessary for his comfortable support and maintenance, and that, at his death, same, or so much as he shall not have disposed of by devise or sale, shall descend to my three beloved nieces, P. E. C., G. E. C., and I. E. C.,' is, as to real estate, a devise to S. C. in fee simple, with no limitation over, and creates no trust, executory or otherwise. An execution of power to name beneficiaries to take under the deed, which designates A, his heirs, executors, administrators, and assigns, forever, with the hope and trust that he will not diminish the same, and a provision that at his death so much thereof that he shall not have disposed of by devise or sale shall descend to B, vests the fee simple absolute in A, with no remainder."

It will be seen from the opinion *supra*, that the court refers with seeming approval to the cases of Jackson v. Bull, Ide v. Ide, Melson v. Cooper, and Ramsdell v. Ramsdell, hereinbefore referred to, together with many other decisions.

It is the contention of appellee that the opinion of this court in Barth v. Barth, 38 S. W., 511, sustains his contention that a will which conveys real estate, with power to sell, passes the fee to the first taker, and that any further devise over is void. The syllabus of this decision is as follows: "Under a devise by a testator to his widow of all his estate, real and personal, absolutely and forever, with power to sell or dispose of as she deems proper, the widow took the fee, notwithstanding the subsequent provision of the will that all the property

that remained at her death should be equally divided among the testator's sons; the devise over of what might remain being inconsistent with the fee, and therefore void." It seems to us that the decided weight of authority, if, indeed, there be any to the contrary, is to the effect that a will or deed giving to the vendee or devisee full power to sell and convey passes the absolute fee, and that any provision or devise is absolutely void for the reason that it is inconsistent with or repugnant to the fee. And it is wholly immaterial whether the power to sell or dispose of the property shall have been exercised or not. This view is not at all in conflict with the law which allows a power of appointment to be vested in one who merely owns a life estate in the property.

We deem it unnecessary to discuss or decide the other questions presented by counsel. Judgment affirmed.

Petition for rehearing filed by appellee and overruled.