## Weller, et al. v. Dinwiddie, et al.

(Decided March 20, 1923.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Wills—"Remainder" in Left-over Held not Used in Technical Sense. —The word "remainder" in its ordinary sense means what is left or what may remain, and in a legal sense it means what is left of the entire estate in lands after a preceding part of the same has been disposed of whose regular termination the remainder

must await; and, in a holographic will prepared by a real estate broker, which gave the property to his wife and son, with provision that at the death of either the remainder was to revert to the last one, and at the death of both to pass to the son's children, the word "remainder" was not used in its technical sense, in view of the testator's apparent failure to know the legal meaning of "revert" and of "life estate," but manifested an intention to dispose of the property which might remain unsold at the death of the original devisee.

2.  Estates—Law Favors Vested Estates.—The policy of the law is to stabilize land titles and to favor vested estates.

3.  Wills—Gift with Unlimited Power of Disposition Passes the Fee.— Under Ky. Stats., section 2342, making every estate created by deed or will without words of inheritance a fee simple or such other estate as grantor or testator had power to dispose of unless a different purpose appears, a devise to a wife and son of all real and personal property created a fee, as did also a subsequent clause making a gift over of the property not disposed of by the original devisee, which would import an unlimited power of disposition in the first takers.

4.  Wills—Contrary Intention Controls Apparent Gift of Fee.—Even though the will in the first instance gives what would be a fee if standing alone, a contrary intention, appearing from the entire instrument, regardless of the language used, to give only a life estate with remainder over, will control.

5.  Wills—Left-over After Intended Gift of Fee is Invalid.—Where a testator intended to give his wife and son the unlimited power of disposition over the lands, thereby giving them the fee, an attempt by him to make a gift over of whatever property the wife and son did not dispose of is invalid.

O. H. HARRISON and BURWELL K. MARSHALL for apppellants.

SHACKELFORD MILLER and ERNEST W. SPRAGUE for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

This appeal involves the construction of the holographic will of James M. Dinwiddie, a retired real estate broker, who left an estate valued at $100,000.00, of which from forty to fifty per cent was real estate.

His near relatives were a wife, 69 years of age, and a son and his wife, they having no children. He also had a sister and several nieces.

So much of the will as is necessary to be considered reads as follows:

"Second. I devise and bequeath to my dear wife, Mattie Dinwiddie, all of my real and personal property of every description, except my unimproved property, all of which I give to my son, Clarence R. Dinwiddie, together with any indebtedness he may be owing me. Also $5,000.00 in cash, to be paid son within one year after my death.

"Third. At the death of either my wife or son, I want the remainder to revert to the living one and at the death of both my wife and son then to my son's child or children share and share alike, if no children then to my sister, Ophelia S. Sumners and my nieces, Sudie O. Weller, Lillie M. Martin and Cora J. Shrader, and to my daughter-in-law, Bell Dinwiddie, share and share alike."

The wife was appointed executrix without bond with direction for no inventory or appraisement to be made.

In a suit in the Jefferson circuit court, the chancellor held that by the provisions of the will the widow and son were devised an estate in fee simple, and that the attempted limitations over were void. The sister and nieces have appealed and are contending that under a proper construction, the widow and son are given life estates only, with the remainder to the survivor, and that on a failure of issue the remainder was devised to them and the son's wife in equal shares.

The controversy centers around the word "remainder" as used in the third clause. In its ordinary sense that word is defined as "the survivor; what may be left," 34 Cyc. 1200; "that which remains; something left as after subtraction," Funk and Wagnalls; "A portion of a thing remaining or left at the separation and removal of a part; remnant; residue," Webster's New International Dictionary. Abbreviated they all include the idea of "what is left" or "what may remain."

In a legal sense it is harder to define. A remainder is "what is left of the entire estate in lands or tenements after a preceding part of the same has been disposed of, and whose regular termination the remainder must await." Minor's Institutes, vol. 2, page 282. It cannot follow a fee, but is limited on a prior particular estate and contemplates a separation of the grantor's estate in point of time, not according to quantity. While it does not take effect until the termination of the particular estate each of the two embraces the corpus, that is, the whole of the grantor's estate though to be enjoyed at different periods.

The policy of the law is to stabilize land titles and to favor vested estates.

Section 2342, Ky. Statutes, provides:

"Unless a different purpose appear by express words or necessary inference, every estate in land created by deed or will without words of inheritance, shall be deemed a fee simple or such other estate as the grantor or testator had power to dispose of."

Considering the will in the light of the statute it is clear the second clause standing alone would create a fee; and if the popular meaning of "what is left" or "what may remain" is given the word "remainder" the same result would obtain, for such words import an unlimited power of disposition in the first takers, which is construed to pass the fee. Plaggenborg v. Molendyke, 187 Ky. 509; Linder v. Llewellen's Admr., et al., 190 Ky. 388; Galloway v. Durham, 118 Ky. 544; Clay v. Chenault, 108 Ky. 77.

It is further true that the court has held in a number of cases that even though the will in the first instance gives what would be a fee if standing alone, if from the entire instrument, whatever the language used, it is shown that the testator intended to give a life estate with remainder over, such intention must control. In other words, such construction is not an attempt to base a life estate upon a fee but is an effort to determine which of the two estates was created. Anderson v. Hall, 80 Ky. 91; Thurmond v. Thurmond, 190 Ky. 582; Fernandez v. Martin, 189 Ky. 438; Phelps v. Stoner, 184 Ky. 466.

The appellants claim that in this case the testator used the word "remainder" in its technical, legal sense, meaning the "remnant of the whole estate," not the unused or undisposed portion, and thereby intended to give to his wife and son a life estate only, with remainder over, and argue that the cases last cited are authority for so holding.

If we accept this as a correct legal proposition, and if from the entire will it is shown that the testator knew the meaning and qualities of the terms he employed and used them in their legal sense, appellants' contention should be upheld.

Ordinarily technical words appearing in an instrument will be considered in their legal sense if nothing to the contrary appears, but in a holographic will written by an ordinary business man we can hardly expect the

writer to have knowledge of technical terms. That testator did not possess such knowledge is manifested in his directing the "remainder to revert." It is well understood that a remainder may be given, granted or devised, but it never "reverts." A remainder vests in a grantee or devisee, while a reversion returns or reverts to the grantor or his heirs.

A failure to distinguish in this particular does not of itself prove that he did not know the meaning of "legal remainder," but if he did he must have known the corresponding term of "life estate." If he possessed such knowledge and desired to create such estate the reasonable presumption is that he would have used that term to express his intention, and would not have used language sufficient to create a fee in the first instance, and then have limited it with a single word that he knew had two widely different meanings. This is highly persuasive that it was used in the popular sense, whether he knew its legal meaning or not.

Taking the will as a whole and viewing it in the light of a human document, we have the picture of a kind husband and father, who at an advanced age is settling his earthly effects and who first devises to the natural objects of his bounty, his aged wife and only son, his entire estate without limitation as to use or disposition. The bulk of the estate is personalty and of a character that the corpus might be preserved, but the wife was appointed executrix without bond or inventory, thus manifesting not only the confidence of the testator, but indicating that he did not want her disturbed in its use or disposition, nor the amount she received to become known; likewise as to the cash and indebtedness given to the son. These were to be paid to him and it is hard to conceive of a remainder in a payment to a legatee, but if susceptible of this construction, as no appraisement was permitted, the remaindermen could not ascertain the amount of the son's indebtedness and certainly no remainder was contemplated in it.

The personalty and real estate are both devised in the same clause, but it will also be observed that the improved realty was given to the wife, and the unimproved to the son, the presumption being that the former would derive an income from the rents, while the son had the time and opportunity to develop the other. It is hardly probable that the testator expected him to hold it through

life and keep up the taxes without any income therefrom, and to preserve the fee for the remaindermen.

Considering the will in its entirety it is evident that the testator used the word "remainder" in its popular sense, meaning "what is left," and that he did not intend thereby to place any restriction upon the use or disposition of the devises to his widow and son.

In his opinion the learned chancellor of the lower court said:

"He may have thought that he could give absolute title to the property to his widow and son and still have the right to say if anything remained or was left after they had used or consumed as much as they wished, it should go to his other relatives. It was the human thing for an aged man to hope, to wish for, but it may not be. Fernandez v. Martin, 189 Ky. 438. There can be no limitation upon a fee once granted. The construction which this court puts upon the word 'remainder' that is, that it is equivalent to 'remaining' or 'what may be left,' carries with it the power to sell and convey, and that construction itself creates a fee."

In this we concur.

Judgment affirmed.