## Hankins v. Columbia Trust Co., et al.

(Decided February 10, 1911.)

Appeal from Jefferson Circuit Court.
(First Chancery Division.)

Contracts—Action to Compel Specific Performance—Will—Takes Effect Immediately Before Death of Testator.—The judgment enforcing specific performance of the contract, whereby appellees, as executor of the will of Francis Bernet sold appellant a lot of ground was proper. Although the lot was devised the testator by the will of his wife, pursuant to a power to so dispose of it,

conferred by a deed made subsequently to the execution of her will, the devise passed to him a valid title to the lot, as under sections 4845 and 4889, Kentucky Statutes, the will of the wife with reference to the real estate devised and the power of appointment exercised took effect as if executed immediately before the death of the testator, a contrary intention not appearing by the will.

E. L. McDONALD for appellant.

R. C. KINKEAD and H. H. NETTLEROTH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Francis Bernet, a resident of the City of Louisville, died January 10th, 1909, testate. By his will, which was duly admitted to probate in the Jefferson county court, his executors named therein, the appellees, Columbia Trust Company and Peter Dietsen, were directed to sell for cash the testator's real and personal estate and apply the proceeds to the satisfaction of legacies made to certain of the testator's kindred and three benevolent institutions of the City of Louisville. Pursuant to the power thus conferred, the executors, following their qualification, sold to the appellant, T. H. Hankins, at the price of $2,400.00, a lot situated on Preston street, in the City of Louisville, which was a part of the real estate left by the testator. The executors prepared and tendered appellant a deed to the lot in question, but he declined to accept the deed, or to pay the consideration agreed upon for the lot; thereupon, appellees instituted this action against him in the court below for a specific performance of the contract, again tendering, with the petition, the deed which appellant had theretofore refused to accept.

The appellant by answer denied that the testator, Francis Bernet, owned the lot at the time of his death, and averred that the deed tendered him by the executors of the will would not vest in him the title thereto. It was further averred in the answer that the lot was conveyed by Francis Bernet to his wife, Mary Bernet, by deed dated July 12th, 1894 recorded in the Jefferson county court clerk's office, which deed recited that it was made in consideration of the natural love and affection the grantor had for his wife; and by which deed it was provided that the wife should have the power and authority to dispose of the lot by her last will and testament; that Mary Bernet died March 1st, 1908, leaving a will which bore date November 30th, 1881, and was probated in the

Jefferson county court on March 5th, 1908, and by this will she devised to her husband, Francis Bernet, all her property of whatsoever kind; that as the will of Mary Bernet was executed before the passage of the act by the legislature of Kentucky, which authorized married women to make a valid will devising real estate, it did not invest the husband with the title to the lot in question, and that the power to dispose of it by will conferred upon her by the deed from her husband, having been given after the execution of the will, could not be exercised by the wife, and that upon the death of Mary Bernet the title to the real estate attempted to be devised by her will vested in her heirs at law, subject to the husband's life estate therein as tenant by curtesy. A demurrer was filed by appellees to the answer, which the circuit court sustained. Appellant refused to plead further, and judgment was entered specifically enforcing the contract as prayed in the petition; appellant being dissatisfied with the judgment, has appealed.

Our consideration of the question presented by the appeal leads us to concur in the judgment rendered by the circuit court, and as the opinion written by the judge of that Court (now a member of this court), contains an elaborate review of all the authorities, both English and American, bearing upon every aspect of the question involved and aptly and correctly expresses our views thereon, we hereby adopt and publish the same as our opinion in the case:

"The Columbia Trust Company and Peter Dietson as executors of the will of Francis Bernet bring this suit for the specific performance of a contract for the sale of a lot of ground on Preston street in Louisville, to the defendant Hankins. Prior to July 12th, 1894, Francis Bernet was the owner of said lot; and on that day he conveyed it to Mary Bernet, his wife, in consideration of natural love and affection with power to her to dispose of it by last will and testament. Mary died on March 1st, 1908, leaving a will which she had executed on November 30th, 1881, more than twelve years before she acquired this property, whereby she devised 'all of her estate, real and personal, of which she might die seized or possessed to her husband, Francis.' Francis died testate on January 10th, 1909, having devised the property in question to the plaintiff as his executor with power of sale. Hankins refuses to take the title, because Mary being a married woman, had no power in 1881, to make

a will of her land except such as may have been secured to her separate estate by deed or devise, or in the exercise of a written power to make a will as is provided by statute, and that the execution of her will in 1881 was not as defendant claims a valid execution of the power of appointment subsequently given her in the deed of 1894. If that contention be sound it is clear that the legal title to this lot is in the heir at law of Mary Bernet and not in the executor of Francis, her husband.

"In speaking generally on this subject that eminent authority Sir Edward Sugden says:

" 'It is firmly settled that a mere general devise or bequest, however unlimited in terms will not comprehend the subject of the power unless it refer to the subject or to the power itself, or generally to any power vested in the testator.' (1st Sudgen on Powers, 3rd Ed. 416.)

"The result of the modern authorities is summarized in the Cyclopedia of Law and Procedure as follows:

" 'While there is some conflict of authority the better view seems to be that a will executed prior to the creation of a power can not be held an execution thereof in the absence of statutory provisions to the effect that a will so executed should be operative in such a manner.' (Vol. 31, p. 1130.)

"In the leading American case of Blagge v. Miles (1841), 1 Story 426, Judge Story said:

" 'It is now admitted to be established, as a general rule that the intention of the testator is the pole star to direct the court in the interpretation of wills. Similar doctrines now generally prevail in regard to the execution of powers, and especially in regard to their execution by last wills and testaments. The intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful under all the circumstances then that doubt will prevent it from being deemed an execution of the power.

" 'Three classes of cases have been held to be sufficient demonstration of an intended execution of the power: (1) Where there has been some reference in the will or other instrument, to the power; (2) or a reference to the property, which is the subject on which it is to be executed; (3) or where the provision in the will or other instrument executed by the donee of the power would otherwise, be ineffectual or a mere nullity—in other words, it

would have no operation, except as an execution of the power.'

"The rule just stated was approved in Blake v. Hawkins, 98 U. S., 315, and in Lee v. Simpson, 134 U. S., 672, and is generally, though not universally, recognized throughout the country, where it has not been altered by statute. (Lane v. Lane (1903) Del., 64 L. R. A., 849.) This rule of construction was a necessary result of that other common law rule which declared that a will devising real estate took effect at the date of its execution; and by analogy a will taking effect before the creation of a power of appointment, would not operate to execute the subsequently created power. (Jones v. Southall, 32 Beav., 31; In Re Phillipps L. R. 41 Ch. Div., 417; Re Hayes (1900), 2 Ch., 332; Murray's Estate, W. N. C., 552; Matteson v. Goddard, 17 R. I., 299; Harvard College v. Balch, 171 Ill., 275; Dunn's Appeal, 85 Pa., 94; Lepley v. Smith, 13 Ohio C. C., 189).

"The rule has, however, been affected by the following sections of the Kentucky Statutes:

" '4839: A will shall be construed with reference to the real and personal estate comprised in it, to speak and to take effect as if it had been executed immediately before the death of the testator unless a contrary intention shall appear by the will.'

" '4845: A devise or bequest shall extend to any real or personal estate over which the testator has a discretionary power of appointment and to which it would apply if the estate was his own property, unless a contrary intention shall appear by the will.'

"It thus appears that section 4839 removes the technical reason for the rule by making the will take effect after the grant of the power, while section 4845 dispenses with the requirements that the will should refer to the power of appointment or the property which is the subject on which it is to be executed.

"In speaking of this last section in Herbert's Guar. v. Herbert's Exr., 85 Ky., 147, the court said:

" 'The exercise of the power, if it had been attempted by the will of Sidney Herbert would certainly not have been good at common law because it nowhere appears from the face of that paper that such was his purpose. This doctrine has been modified by our statute.

" 'This provision of the statute evidently means that when the power of appointment is given to be exercised by a last will that a devise of the testator's whole estate

to the person who in the testator's discretion he has the right to designate, the person thus designated will take under the devise and the same shall be regarded as an execution of the power, although the power given may not be mentioned or referred to.' See also Payne v. Johnson, 95 Ky., 184.

"These two sections from our statute are taken from and are substantially identical with sections 24 and 27 of the English Wills Act. (7 Wm. IV., and 1st Vict. Chap., 26.) Applying the English Act in Thomas v. Jones, 2d Johns and H., 475, 31 L. J. Ch. N. S., 732, Vice Ch. W. Page-Wood said:

" 'The 24th section enacts that every will shall be construed with reference to the real and personal estate comprised therein, to speak and to take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will; and by the 27th section (for the two are connected together) it is enacted that a general devise of real estate shall be construed to include any real estate which the testator may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will. The 24th section draws down the will to the date of the death of the testator, thus getting over the difficulty as to after acquired property. It seems to me to be the true construction of the statute, coupling the 24th and 27th sections together, that a will may operate as an execution of all powers in the testator immediately before his death. If that construction, which was come to in Stillman v. Weedon (16 Sim., 26, 18 L. T. Ch. N. S., 46), be sound (and Lord St. Leonards does not dissent from it), a person sui juris must be held to intend his will to operate on powers which he has not at the date of executing it but which he acquired before his death.'

"The same construction was given the statute in Cofield v. Pollard, 3 Jur. N. S., 1203, and in Hodsdon v. Dancer, 16 Week Rep., 1101.

"The modified rule under the statute as laid down in the English case last above cited seems entirely sound; and as the Kentucky Statute is substantially the same as the English statute which has been construed in those cases, it seems entirely proper that the construction there given should be followed here. I, therefore, conclude that a will may, under the statute, execute a power of appointment thereafter created.

"It is contended, however, that although it be true in ordinary cases that a will executed in 1881 would under our statute be a valid execution of a power subsequently granted in 1894, it cannot so operate in this case, because Mary Bernet was a married woman in 1881; and since at that time she had neither a separate estate nor a power of appointment, her will was invalid for want of capacity to then make it.

"The General Statutes which were in force in 1881 when Mary Bernet made her will provided as follows:

" 'A married woman may by will dispose of any estate secured to her separate use by deed or devise or in the exercise of a written power to make a will.' (Chap. 113, Sec. 4.)

"We here have two classes of cases in which a married woman could then make a will: 1st, she could so dispose of her separate estate, and second, she could also make a will in the exercise of a written power of appointment; and while the deed of July 12th, 1894, from Francis to his wife, Mary, did not create in her a separate estate, it did give her 'the power and authority to dispose of the said property by her last will and testament.'

"But in discussing this point we should not overlook the plain and evident distinction between the general incapacity of a married woman, in 1881, to make a will devising her general estate and her incapacity to execute a testamentary power for want of a present existence of her power. In the first instance her will, like the will of an infant or an insane person is absolutely void for all purposes as was held in Gregory v. Oates, 92 Ky., 532; while her will made in the exercise of a testamentary power of appointment although it may prove abortive for want of a then existing power, it may nevertheless like powers granted to persons discovert, become effective by the acquisition of the power before her death. In this latter case, the statute saved the power of appointment by making it take effect after the creation of the power, thus bringing it within the general rule that a will may, under the statutes, be a valid exercise of the power of appointment subsequently created. Hickman v. Brown, 88 Ky., 378, is not at all inconsistent with this view, because in that case Mrs. Brown at the time of her death had neither separate estate nor the power of appointment—the only two contingencies under which she could then make a valid will.

"This subject was well discussed by vice chancellor Sir W. Page Wood (afterwards Lord Chancellor Hatherly), in Thomas v. Jones, supra, in the following language: 'I have now to consider the effect of the 8th section. In Bernard v. Minshull the question was whether a general gift by a married woman would operate to pass property over which she had only a testamentary power. And the argument there was, as here, that the intention of the 8th section was that no will by a married woman should be valid except such a will as she might have made before the passing of the act. The explanation I then gave (to which I still adhere) was that inasmuch as a previous section had enacted that all property might be disposed of by will which seemed to be a general and complete enactment, it was necessary to introduce the two sections, 7th and 8th, by one of which it is declared that no will made by an infant under 21 shall be valid, and by the other, that no will made by a married woman shall be valid except such a will as might have been made before the passing of the act. That answers Mr. Williams' argument. He suggests that if you construe the 24th section as applying to the case of a married woman then a married woman having made a simple will, and becoming discovert before death the 24th section would make the will valid. The answer is that the 8th section was meant to meet that case. In the same way as to infants, it may be argued that an infant may attain full age, and that a will made before that time would speak from his death, and become valid. And so it would but for the 7th section, which annuls all wills made by persons under incapacity from the moment their being made; and the true construction, I apprehend of the 7th and 8th sections is that the statute does not give capacity to those who have no testamentary capacity; but when persons have capacity to will, as in the case of a married woman with a testamentary power, then you must deal with the will so made according to all the rules of construction which are laid down by the acts as to wills in general. That is the conclusion to which I come upon that part of the subject. This lady having capacity to make a testamentary appointment in the first instance, it is no answer to say that she had no capacity to will because she is not yet a survivor; that would apply just as much to a femme sole or a man and does not depend on the special incapacity of a coverture which the 8th section was inserted to preserve. A man had no capacity to make a gift under

a power before he has acquired it. Nevertheless when a testator makes a general bequest and afterwards acquires a power that power takes effect by virtue of the general bequest and the rule applies equally to a married woman. The construction I give to the 8th section is that it disables a married woman from doing anything which before the passing of the act she could not have done by reason of her coverture; it preserves the incapacity of her coverture as it stood before the act, but as regards any incapacity arising from matters independent from coverture, applicable to men and women alike, the statute was not intended to draw a distinction between married women and other persons. The state makes the will operate as if executed immediately before the death, and the effect of this is, in the case of a married woman that she must be regarded as a married woman executing the instrument immediately before her death, and passing thereby everything of which at the time of her death she had acquired a power of disposing.'

"This case was approved upon appeal in an opinion by Lord Westbury. (1 De Gex. J. & S., 63).

"In applying the general rule as heretofore announced I can see no reason for putting the wife, who has an express power of appointment given her, upon a different footing from her husband who exercises no greater power of appointment under a like power. Every reason that sustains his right to exercise by will a power subsequently granted to him, equally sustains the wife's similar right where a statute gives her the right to make a will.

"But it is contended not only that the will of 1881 was not an effective disposition under the General Statutes of a separate estate thereafter acquired, but that it could not be an effective disposition of a separate estate under the act of 1894, because in 1881 Mrs. Bernet could only devise her equitable separate estate, while under the act of 1894 she is given power to devise her statutory separate estate.

"The act of March 15th, 1894, known as the Weissinger 'Married Woman's Act,' and now embodied in part in section 2147 of the Kentucky Statutes provides as follows:

" 'A married woman if she be of sound mind and 21 years of age may dispose of her estate by last will and testament subject to the provisions of this act.'

"This argument is based upon the two erroneous propositions that this land was held by Mrs. Bernet as her separate estate, and that the Weissinger act empowered the wife to dispose of her separate estate without a written power, or rather made a separate estate of what had theretofore been general estate, so as to enable her to devise it under section 4 of chapter 113 of the General Statutes above quoted.

"It is evident, however, that the purpose and effect of the act of 1894 was to enlarge the wife's power of disposition by enabling her to dispose of her estate of any kind, both general and separate estate, whereupon the old provision found in section 4 of chapter 113 of the General Statutes necessarily disappeared from our statutes.

"And in view of the fact that the statute of 1881 gave a married woman a right to dispose of her estate 'secured to her separate use by deed or devise,' while the act of 1894 gives her the right to dispose of her estate of every kind, it can not be said that the legislature intended to draw the distinction contended for. Moreover, the trend of modern authority supports the conclusion that there is no distinction under the chancery rules arising out of the formal nature of the wife's separate estate, with reference to whether it vested at common law, or by statute, or in equity. (James v. Gray, 131 Fed. 401), 65 C. C. A., 385; 1 L. R. A. (N. S.), 327; Pomeroy's Eq. Juris. 2d Ed., Secs. 79 and 90.

"But this case presents no such question: there is no separate estate or any attempt to dispose of one. The terms of the deed are not sufficient to create a separate estate and the fact that her husband conveyed the land directly to his wife does not have the effect of creating a separate estate in the wife. (Crane v. Edwards, 92 Ky., 109.)

"The deed by which Francis Bernet conveyed this lot to his wife, Mary, was executed and delivered July 12th, 1894, after the Weissinger Act of March 15, 1894, had become effective as the law; and it is contended by plaintiff that her will of 1881, invalid then as a disposition of her general estate, became valid by virtue of the Weissinger Act of 1894 without ever having re-executed her will made in 1881. It is argued that she knew that the act of 1894 had given her the right to dispose of her property by will, and that by another express provision of the statute her will would be treated as if it had been executed immediately before her death; and under

these circumstances, there being no restrictions as to either right, she might well inquire, why should she be required to go through the formality of making a new will?

"It is true the Weissinger Act of 1894 not only supplanted section 4 of chapter 113 of the General Statutes, which had confined a married woman's right to make a will to the two cases of her separate estate and the exercise of a written power of appointment, but it enlarged her power by wiping out these restrictions. But the power granted by the Weissinger Act was not in existence when Mrs. Bernet made the will in 1881; and it is the absence of that power which invalidates the will except as to the exercise of appointment, a power expressly given her by the statute then in force. I think this question is concluded against the plaintiffs by the decision in Gregory v. Oates, 92 Ky., 532.

"Mrs. Bernet's will does not, by its terms, purport to exercise any power of disposition, and it is only by virtue of section 4845 of the Kentucky Statutes, above quoted, that it can be construed to be a valid execution of the power. The will is drawn in general terms and would undoubtedly have disposed of her general estate if it had been executed after the passage of the Weissinger Act of 1894. But when Mrs. Bernet executed her will in 1881, she had no power to dispose of her general estate. So, while her will is a good execution of the power subsequently created, it is not a valid will under the Weissinger Act. Page on Wills, Sec. 93; Anderson v. Miller, 7 J. J. Mar., 573; Mullock v. Souder, 5 W. & S., 198.)

"I conclude, therefore, that under our statutory modification of the common law rule, a will may effectively execute a power of appointment thereafter created, and that the will applies equally to the will of the married woman executed in 1881, pursuant to the authority then existing under the General Statutes by which a married woman could make a will in the exercise of a power; and that while Mrs. Bernet's will of 1881 was not a valid will under the Weissinger Act of 1894 it operated as a valid exercise of the power of appointment under the rule above mentioned."

Judgment affirmed. Whole court, except Judge Miller, sitting.