# Greenway v. David I. White and David Irvine (White).

(Decided March 10, 1922.)

## Appeal from Madison Circuit Court.

1. Wills—Construction—Intention of Testator.—The cardinal rule for interpreting a will is to ascertain the intention of the testator from the language he employs in the entire testamentary paper

and to construe it accordingly if to do so would not contravene any positive rule of law or of public policy; and it is the tendency of courts to so construe wills at the expense of formerly administered technical rules of law. Therefore, where an absolute estate is given in one clause and later language is employed clearly indicating that it was the intention of the testator to limit the estate so given the limitation will be upheld, but if the limitation only purports to apply to the remaining portion of the property which the absolute taker might leave or not dispose of, he having the power to do so then the limitation will not apply because it is repugnant to the absolute gift.

2.   Wills—Execution of Powers.—A will sufficient in law to pass title to the testator's individual property is sufficent, under the provisions of section 4845 of the statutes, to transfer any property which he has the right to devise as the donee of a power, and a will so executed, under the provisions of the section, will be deemed as an execution of the power unless a contrary intention shall appear by the will of the donee.

3.   Wills—Residuary Clause.—A residuary clause in a will is sufficient to transfer and pass title to all of the property of the testator, not specifically devised, to the residuary legatee or devisee, and it is also sufficient to transfer property over which the testator, as the donee of a power, is authorized to appoint by his will, unless a contrary interpretation be expressed therein.

4.   Wills—Revocation of Appointment—Intention.—A residuary clause in the will of the donee of a power to appoint by will may not be sufficient to execute the power although no intention appears in the will not to do so in cases where the donor has already appointed the property but given to the donee the power to revoke it and reappoint the property. In that case there should be an express revocation by the donee of the prior appointment, or it should apear from the executing paper that it was his intention to revoke the prior appointment, and a residuary clause in a will unaccompanied with other expressions therein from which the intention to revoke may be implied will not have the effect of a revocation.

GRANTY E. LILLY and O'REAR & FOWLER for appellant.

ALLEN & DUNCAN for appellee, David I. White.

JOHN D. CARROLL and JOHN NOLAND for appellee, David Irvine (White).

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On April 7, 1885, William M. Irvine, who resided at Richmond, Kentucky, executed his will. He died in the early part of April, 1891, and his will was duly probated on the 6th day of April of that year. He was married

but had no children and left surviving him his widow, Elizabeth S. Irvine, who died a resident of Madison county, Kentucky, November 25, 1920, leaving a last will and testament which was probated in the Madison county court on the 6th day of December following her death. The husband was the owner of a considerable amount of property as was also his wife, but a large portion of his property was derived through his wife, including a part of the two hundred (200) acre farm lying near Richmond, Kentucky, which is the subject matter of this litigation.

The heading and the introductory clause of the will of William M. Irvine says:

"I, William M. Irvine, of Richmond, Madison county, Kentucky, do make and declare this to be my last will and testament and do hereby revoke all former wills.

"It is my will that my wife, Elizabeth S. Irvine, shall have all of my estate, real and mixed, and personal, as my sole heir, and I do hereby appoint her my executrix, and request that the court of the county shall not require any inventory of my estate, or any security on her bond as executrix of this my last will.

"In the event, however, that she my wife dies intestate and without making any disposition of my estate then I provide that my estate shall be divided as follows."

In succeeding clauses he disposed of specific property to specified devisees and provided that appellant, William Irvine Greenway, should be his residuary legatee, and "anything left after paying all above legacies to descend to him," He then added:

"Now, by way of explanation, I make all of the above legacies subject to the approval, alteration or change, in part or in whole, of my wife Elizabeth S. Irvine, except the legacies to my half-brother, John S. Harris, these I require to be paid at her death."

Mrs. Elizabeth S. Irvine after prefacing her will with a short biographical sketch of herself began it by saying: "Being of sound mind, do this day, June 1st, 1915, make and subscribe to this last will and testament, revoking all other wills. I am empowered by my husband, William M. Irvine's last will to make any changes in that instrument I might desire, and I shall proceed to to so in this writing." Her will was written by herself and is a very long one and towards its close she wrote a memorial in these words: "And now my task is done, I

have made changes in my husband's last will. Such changes, however, as I am empowered by that instrument to make. Of these changes he and myself have consulted and I am satisfied those I have made would meet with his hearty approval." In three places in her will she designated the appellant, William Irvine Greenway, as her residuary legatee. The second clause of her husband's will devised to appellee David Irvine White "during his natural life" what testator designated as "my farm" containing about two hundred (200) acres situated near Richmond, Kentucky, and after the death of David Irvine White to the second son of the life tenant, the appellee, David Irvine (White) "provided he drop the White from his name and take that of his grandfather, David Irvine." In the same clause there was bequeathed to testator's half brother, John S. Harris, five thousand dollars ($5,000.00) to be invested in a home to be used by the devisee during his life and at his death to the appellant, William Irvine Greenway. Mrs. Irvine in her will made no specific reference to, or mention of, the two hundred (200) acre farm referred to in the second clause of the will of Mr. Irvine, but she did refer therein in what is designated in the record as the "null and void" clause of her will to that portion of her husband's will "which bequeaths any stocks, bonds, real estate or legacies, of any kind, to the children of Addison and Sarah of Huntsville, Alabama," and stated therein that "I have made other devisees of my estate, which was all my own, I will here state that I was made a *'feme sole'* by my father's will and my husband's last will, makes a return of all to me."

This contest is between appellant William Irvine Greenway on the one side and appellee David I. White and his son David Irvine (White) on the other side as to who is entitled to the two hundred (200) acre farm, the settlement of which requires an interpretation of the portions of the two wills which we have inserted above in the light of other portions of the wills and the circumstances and surroundings of the parties. Appellant contends, (1) that the will of William M. Irvine devised all of his property absolutely and in fee simple title to his wife and that the subsequent attempt by him therein to confer the property upon others with the power in his wife to make a different appointment of it by her will was void and that as residuary legatee of Mrs. Irvine he is entitled to the farm; but, if mistaken

in this, then (2) that Mrs. Irvine did legally exercise the power of appointment conferred on her by her husband's will in the execution of *her* will and that as residuary legatee therein he is entitled to the farm. The appellees combat each of those contentions and the trial court gave judgment in their favor and held that David I. White was entitled to the farm during his life and after his death it went, under the second clause of William M. Irvine's will, to the life tenant's son, David Irvine (White), and that appellant, William Irvine Greenway, had no interest therein, and complaining of that judgment the latter has appealed.

It appears in the pleadings that appellee, David Irvine (White), since the death of Mrs. Irvine, by a duly prosecuted court proceeding in the county of his residence in the state of Missouri changed his name from David Irvine White to David Irvine, and there is some question made about the timeliness of that action in order to entitle him to the benefits of the second clause of William M. Irvine's will, but the conclusion we have reached as to the merits of the case makes it unnecessary to enter into a discussion of that question.

Coming now to the principal questions for decision and taking up the first contention (1), it may be admitted that some of the earlier decisions, including perhaps some from this court, under the ancient common law doctrine that there could be no limitation upon a fee held that where a will or other instrument of conveyance gave an estate absolutely to one with express or implied power of unrestricted disposition the estate could not be reduced by any subsequent provision of the instrument; but the courts generally, including this one, have long since come to the conclusion that the rule requiring the intention of the maker, either of a will or deed, as gathered from the entire instrument to prevail, overshadows and dispenses with the ancient technical common law rule and that where it appears from the entire language of the will or deed that it was the intention of the maker to limit the estate given or granted to less than an absolute one, that intention will prevail. Hence, it may be said that this court has consistently, since the case of Clay v. Chenault, 108 Ky. 77, held that where one clause of the instrument was broad enough to transfer an absolute title and in another part thereof it appeared that it was the intention of the maker to limit the interest in the corpus of the property in the

first taker and to dispose of the entire corpus after the expiration of that interest, such intention would prevail and the first interest would be construed as a limited one according to the terms of the instrument creating it; but, where the attempted limiting clause purported to dispose of what might *remain* of the corpus, or what might be left of it after the first taker partially exercised his right of absolute disposition, then and in that case the attempted limiting clause would be void unless the interest of the first taker was *expressly* limited to a life estate, in which event his interest would be construed as one only for his life with power of disposition and if he did not exercise the power the limiting clause would attach to that portion of the property with reference to which the power had not been exercised. Cases supporting the latter proposition are McCullough's Admr. v. Anderson, 90 Ky. 126, and Peddigo's Executrix v. Botts, 28 Ky. L. R. 196. The first stated rule is sustained by text writers as well, but we will not encumber this opinion with a citation of them. Cases from this court supporting the first proposition are Mitchell v. Campbell, 94 Ky. 324; Clay v. Chenault, *supra;* Dulaney v. Dulaney, 25 Ky. L. R. 1659; Ball v. Hancock, 82 Ky. 107; Commonwealth v. Stoll's Admr., 132 Ky. 234; Beckner v. Roth, idem 429; Nelson v. Nelson, 140 Ky. 410; Todd's Gdn. v. Todd's Admr., 155 Ky. 209; Knost v. Knost, 178 Ky. 267; Trustees Presbyterian Church of Somerset v. Mize, 181 Ky. 567; Commonwealth v. Manuel, 183 Ky. 50; Phelps v. Stoner, 184 Ky. 466; Fernandez v. Martin, 189 Ky. 438, and Thurmond v. Thurmond, 190 Ky. 582. It was further held in the case of Prindible v. Prindible, 186 Ky. 280, where the same question of the right to limit in the same instrument what otherwise appeared to be an absolute gift was involved, that "It must not be forgotten, however, that the sole purpose of construing a will is to arrive at the intention of the testator as disclosed by the entire instrument, and where that intention is plainly expressed, no technical rule of construction will be permitted to defeat it. Watkins, et al. v. Bennett, et al., 170 Ky. 464, 186 S. W. 182. Hence, if upon a consideration of the whole will it clearly appears that the testator intended not to devise the entire fee but a less estate, there is no place for the application of the rule that a subsequent limitation over is void because repugnant to the fee. Phelps v. Stoner's Admr., 184 Ky. 466, 212 S. W. 423." The will in that

case more strongly supported the contention of the invalidity of the limiting clause than in any of the cases referred to, or than does the will of William M. Irvine in this case, yet the court, out of deference to the rule requiring the intention of the testator to prevail, gave effect to the limiting clause. Accepting then for the present as true the contention of appellees that it was the intention of William M. Irvine in this case, as gathered from his entire will, to give to his wife, Elizabeth S. Irvine, only the use of the income of his property with testamentary power of appointment, either as to the whole or a part of it except that devised to his half brother, John S. Harris, and if she should fail to exercise such testamentary power of appointment that it should then go as he directed in the remaining portion of his will, then the only remaining question would be, whether Mrs. Irvine in her will legally executed that power as to the two hundred (200) acres of land involved, which brings us to a consideration of contention (2), *supra.*

At the outset it should be said that a power must be executed in strict conformity with its terms, *i, e.,* if the donor required it to be executed by will it must be done so in that way, and *vice versa,* if it is required to be executed by deed it can not be done by will, but if no mode of execution is prescribed by the donor the power may be exercised in any manner which would legally convey the property, which is the subject matter of the power, but in either event there must be manifested in legal form an intention on the part of the donee to execute it. 31 Cyc. 1117-1118 and 1121, and 21 R. C. L. 792-793. At common law a power ordinarily would not be deemed as executed, unless in the instrument by which it was attempted some reference was made to the *power* or to the *property,* which was the subject matter of it, unless the executing paper would otherwise be ineffectual or a mere nullity and have no operation except as an execution of the power (21 R. C. L. 795, 31 Cyc. 1122-1123), and under that law it was generally held that a residuary devise or bequest in a will containing no reference to the power, or the subject matter thereof, would not be a sufficient execution of the power, though some of the courts so holding further held that the power would be deemed executed in the absence of such references where there appeared a plainly manifested intention to do so. Cyc., *supra,* 1126-1127; and on page 1128 the writer of the

text, still discussing the common law rule says: "Of course a devise or bequest, whether general or specific, or even a general residuary devise or bequest, is sufficient to execute a power of appointment, where there is a clear reference in the will either to the power itself or to the subject matter thereof." All the writers upon the subject, as well as all opinions of the courts, hold that it is competent for the legislature to change or alter the common law rule with reference to the execution of powers, and in England and some of the states it has been changed by statute, in which case it is only sufficient to follow the method pointed out by the statute. The statute in England is section 27 of the English Wills Act, and in our state it is section 4845, which says: "A devise or bequest shall extend to any real or personal estate over which the testator has a discretionary power of appointment, and to which it would apply if the estate was his own property; and shall operate as an execution of such power, unless a contrary intention shall appear by the will."

Even under the common law rule an intention to execute the power need not appear by express terms or recitals in the executing instrument, provided enough appears therein to show that it was the intention of the donee to exercise the power by executing that instrument. Thomas v. Wright, 23 Ky. L. R. 2183, and cases referred to therein. Other cases from this court adopting and applying the common law rule, *supra*, as well as its modifications by the section of the statutes referred to, are: Herbert v. Herbert, 85 Ky. 147; Payne v. Johnson, 95 Ky. 175; Hankins v. Columbia Trust Co., 142 Ky. 206; Henriott v. Good, 153 Ky. 418, and McCormick v. Security Trust Co., etc., 184 Ky. 25.

In the Herbert case, construing the section, *supra*, of our statute, the opinion said: "This provision of the statute evidently means that when the power of appointment is given to be exercised by a last will, that a devise of the testator's (donee's) whole estate to the person who, in the testator's discretion, he has the right to designate, the person thus designated will take under the devise, and the same shall be regarded as the execution of the power, although the power given may not be mentioned or referred to." In the Hankins case, *supra*, the opinion discussed at length the principles hereinbefore referred to and cites many cases from foreign jurisdictions supporting them, and concludes that the

power therein involved was legal and was properly executed by the donee by will though it was made long before the creation of the power, its. language being broad enough to include the property, which was the subject matter of the power, and there appearing no intention not to execute the power; which holding is in strict conformity with the provisions of section 4845, *supra,* of our statute. It is also the rule where such a statute exists that a general residuary clause in the will of the donee of the power is sufficient to cover and pass title to all the property of the testator whether real or personal which is not otherwise specifically devised or bequeathed, unless a contrary intention appears from the will.   Durham's Admr. v. Clay, 142 Ky. 96; 24 A. & E. Encyclopedia, 701, and 18 A. & E. Encyclopedia, 723, and in the latter volume it is said: "A general residuary bequest will operate as an execution of a power of appointment by will, unless it appears that the testator did not intend thereby to execute the power."

But, whether at common law a residuary clause could be construed as a sufficient execution of a general testamentary power, we need not determine, since we are convinced that such a clause is a sufficient execution of such a power under section 4845, *supra,* of the statutes, unless, as therein expressed, "a contrary intention shall appear by the will" of the donee.   And this brings us to the contentions of counsel for appellees (a), that the statute applies only to a *general* power and not to a limited or special one, which latter it is insisted is the only kind of power possessed by Mrs. Irvine, and (b), that an intention not to execute the power conferred upon her by her husband's will, in so far as the two hundred (200) acres of land involved are concerned, appears from her will.   We find ourselves unable to agree with either of these contentions.   In volume 31 Cyc., page 1040 the distinguishing features between a *general* and a *special* or particular power are thus stated: "By a general power is understood a right to appoint to whomsoever the donee pleases.   By a special or particular power is meant that the donee is restricted to objects or beneficiaries designated in the instrument creating the power."   The only fact, as we understand counsel, upon which it is claimed that the power possessed by Mrs. Irvine was a special one is that the method provided by the donor for executing it was limited to a testamentary paper.   But, according to the rule for deter-

mining the difference between the different classes of
powers, that fact has no weight, and, in a number of
cases, *supra,* from this court, the authority to execute
the power only by will was involved and it was not held
that it became a special power on account of that fact.
A special or particular power, as we have seen, is one
that is restricted by the donor to certain designated *ob-
jects* (property), or beneficiaries or class of beneficiar-
ies and the question is not affected in the least by the
method provided for the execution of the power. Mrs.
Irvine, under the will of her husband, was empowered
in the explanatory clause therein contained to either
approve, alter or change it either "in part or the whole,"
except as to the portion devised to his half brother
John S. Harris. She was not restricted either as
to the subject matter of the power or the beneficiaries
whom she might select and there can be no doubt that
as to all the property to which the power attached she
possessed a general and not a special or qualified one.
Her will was sufficient (including the residuary clause)
to cover and pass title to all the property over which
she had testamentary power, in which case, under the
provisions of section 4845, *supra,* the general power of
appointment given her by her husband will be deemed to
have been exercised, unless a contrary intention appears
from her will; and this brings us to a consideration of
contention (b), of appellees' counsel.

We must confess our inability to grasp the very ear-
nest argument of learned counsel in support of this con-
tention. On the contrary, as we construe the will of Mrs.
Irvine, it was her expressed intention to exercise the
power given her by her husband in the making of her
will, and the expression "my property," found in some
parts of her will, does not militate against that conclus-
ion for, as we have heretofore seen, she regarded her
husband's will as dealing with a large portion of prop-
erty rightfully belonging to her and his will as making "a
return of all to me." At the very beginning of her will
she not only refers to the power, but says: "And I shall
proceed to do so in this writing." As we have seen, her
will, including the residuary clause, was sufficient to pass
title to all the property if it had all belonged to her in
her own right. Her husband had given to appellant a
valuable piece of property in the city of Richmond,
which was their home, and contained about sixteen (16)
acres. She changed her husband's disposition of that

property and provided that it be converted into a hospital. The appellant was a favorite nephew of herself and husband, and it would be but natural that she would be inclined to compensate him in her will for having deprived him therein of the home place devised to him by her husband. She gave in her will to appellee David Irvine White and the members of his family property aggregating in value between fifty and sixty thousand dollars, but appellee, David Irvine (White), did not share in all of that property, although he was not entirely neglected in the will of Mrs. Irvine. At the time of the making of her will, the last mentioned appellee had not changed his name to David Irvine, as requested in the will of her husband, and the wife said in her will: "Many of my ancestors are sleeping with loved ones in our beautiful 'City of the Dead,' and now the long honored name of Irvine has passed, but I alone remain yet a little while." From that expression it would appear that the failure of appellee, David Irvine (White), to change his name as requested by the husband during the nearly thirty years succeeding his death was in her mind at the time she wrote her will. But, whether so or not, we are convinced that from the entire will of Mrs. Irvine there appears, not only no "contrary intention" to execute the power which she possessed, but on the contrary there appears an intention to do so.

But, at this point, it is strenuously insisted by learned counsel for appellees that Mrs. Irvine under the will of her husband could not exercise the power of appointment therein conferred upon her without first revoking the appointment made by her husband, the donor of the power, and that she did not in her will revoke such prior appointment of the farm in controversy and that, even if the residuary clause in her will was a sufficient execution of the power of appointment of that farm to appellant, as her residuary legatee, it is ineffectual for the purpose because of her failure to revoke her husband's prior devise of it to the appellees, which it is claimed she did not do in her will, and the English cases of In re Brave-Welch v. Colt, Law Reports Chancery 2, 671; Pomfert v. Perring, 5 De. G. M. & G., 775; Palmer v. Newell, 20 Beavins, 32; Phillips v. Caley, 21 English Ruling Cases, 565, and Garmon v. Glass, 197 Pa. 101, are relied on in support of that contention. The English cases seem to be in point, and to hold that under section 27 of the English Wills Act, which is the same as section

4845, *supra,* of our statutes, a power of appointment, which may be exercised by will, may be executed by a residuary clause in the will of the donee, unless a contrary intention appears from his will, but that a power so executed will not operate to revoke an appointment made by the donor to take effect in the absence of the execution of the power. We will not stop to discuss the soundness of that rule but will accept it as true, in which case it is quite clear from this record that Mrs. Irvine did revoke by her will the prior appointment of the contested farm by her husband to the appellees.

In the case of Brave-Welch v. Colt, relied on, and which supports appellees' contention, the opinion says: "And, moreover, it is clear law as well as common sense that the thing may be done, without any express revocation of the old uses, by the use of words which can take effect only if a revocation of the old uses is implied." In the other cited English cases there was not involved any question of implied revocation and the opinions make no reference to it. In Sudgen on Powers, vol. 1, the learned author says, on star pages 357-358, that: "On the same principle it is, that where a man has a power of revocation, and does an act which can operate only as an exercise of it, and all incidental circumstances prescribed by the proviso are observed, the act shall accordingly be deemed an execution of the power, although no reference whatever is made to it, and there is not any express signification of the intent to determine and disannul the estates which will be defeated by the execution of it." In 31 Cyc. 1121, the text says: "The intention to execute a power must always appear in its execution, either by express terms or recitals, or by necessary implication," which we construe to apply to a power of revocation as well as to a power of appointment. The Pennsylvania case relied on is no authority for the proposition contended for, since the right of the donee therein to revoke the prior appointment and to make a new one was expressly conditioned, in the instrument creating the power, upon the beneficiaries under the first appointment not being obedient to her during her natural life. The donee attempted to exercise the power but she made no reference to the imposed condition upon her power, nor did she state that such disobedience existed, and it was held that without it the power to revoke and reappoint did not exist, which

clearly removes that case from applying to the facts here involved.

We have heretofore inserted the expressions in the will of Mrs. Irvine which conclusively indicate, as we think, her intention to dispose of all the property covered by her husband's will. She not only referred to the power she possessed, but she referred to the property covered by it as having been returned to her and that (referring to the execution of the power) "I shall proceed to do so in this writing." There is no testimony appearing in the record that she had executed any prior will, yet at the very commencement of her will she uses the expression "revoking all other wills," and sorrowfully refers to the fact that "the long honored name of Irvine has passed." In the clause in her will designated in the record as the "null and void clause," she refers to that part of her husband's will which bequeathed stocks, bonds, real estate and legacies "to the children of Addison and Sarah of Huntsville, Alabama," and then recites that she was made a *feme sole* by her father's will and that her husband's last will "makes a return of all to me," and then says: "It is my will that several persons mentioned in the above clause of this writing, (children of Addison and Sarah McDowell White) shall receive no part of my estate, or that of the late William M. Irvine, unless it be devised to them in this instrument. This I reserve as my own right and shall act accordingly." "The above clause," to which she referred therein, was that clause of her husband's will disposing of the farm in contest, and appellee, David I. White, is one of the children of Addison and Sarah, and while she did not refer to the grandchildren of Addison and Sarah, it is quite apparent that her intention was to revoke that clause of her husband's will and to dispose of the property mentioned in it by her own will. Considering all of the facts to which we have referred, there can be no doubt of a clearly implied, if not an expressed, intention on the part of Mrs. Irvine to revoke the appointment made by her husband, except the one to his half brother, which indeed had been settled upon him long before she wrote her will.

We, therefore, conclude that, if we should accept the doctrine of the English cases, it yet remains true that the will of Mrs. Irvine conformed to it and devised the farm in contest through the operation of the residuary clause in her will to the appellant, Greenway.

Up to this point we have considered the will of William M. Irvine as giving to his wife a life estate only in his property with a devise over in remainder and as vesting her with the power to revoke his devise over and to make new appointments of it. It is not clear, however, that such construction is the correct one, but that on the contrary he intended to make his wife "my sole heir" and that if she should die "intestate and without making any disposition of my estate" then it should be divided as he therein directed. There is considerable room for the construction that his disposition of the property should not take effect at all if his wife died testate, or otherwise disposed of the property, in which case there would be no disposition by him for his wife to revoke, since the execution of a will by her or other disposition of the property prevented his will from ever attaching. We will, however, pursue this question no further, since the above conclusion, reached upon the most favorable hypothesis in favor of appellees, disposes of the case against them.

Wherefore, the judgment is reversed with directions to set it aside and to enter one in conformity with the principles of this opinion. Whole court sitting. Judge Clay dissenting.