**WHITE et al.**

v.

**CITY OF RICHMOND et al.**

Court of Appeals of Kentucky.

Dec. 18, 1953.

As Modified on Denial of Rehearing
June 23, 1954.

John Noland and Warfield Z. Miller, Richmond, for appellants.

H. D. Parrish and J. J. Greenleaf, Richmond, for appellees.

COMBS, Justice.

The will of Mrs. Elizabeth Irvine, a resident of Richmond, who died in 1920, is before us for the third time. The other opinions may be found in Greenway v. White, 196 Ky. 745, 246 S.W. 137, 32 A.L.R. 1385, and Greenway v. Irvine's Trustee, 279 Ky. 632, 131 S.W.2d 705, 124 A.L.R. 1229. Mrs. Irvine also owned property in Missouri and the will has been in litigation there. White v. Greenway, 303 Mo. 691, 263 S.W. 104.

The question on this appeal is whether the City of Richmond is entitled under the terms of the will to certain real estate referred to in the will as Irvinton for use as a public park. This property consists of the Mansion House, where Mrs. Irvine lived, and ten or more acres of land within the corporate limits of the City of Richmond. The appellants are heirs of Mrs. Irvine, who contend that the trust established by the will has failed and that they are entitled to the property under KRS 394.500 which covers void and lapsed devises. The chancellor held that the City of Richmond is entitled to the property for use as a public park, but that it must be taken and held under all the conditions set out in the will.

The will is holographic and is unusually long, covering some 25 typewritten pages in the record. It is said that Mrs. Irvine commenced the will in 1915 and added to it intermittently until 1919. As might be expected in an instrument of this length, prepared by a person with no legal training, over a period of years, the document contains a number of inconsistencies and even contradictions.

It was Mrs. Irvine's wish, clearly expressed and emphasized in her will, to leave the property known as "Irvinton" to the Medical Society of Kentucky—now the Kentucky State Medical Association—in trust to be used as a memorial hospital. By this means she intended to perpetuate the memory of her grandfather, Dr. Ephriam McDowell, "the father of ovariotomy," and certain members of the Irvine family. She directed that the income from real estate owned by her in Missouri should be used as a maintenance fund for the hospital. But the Missouri courts refused to permit the will to be probated and the Medical Society found itself with a valuable piece of property but with no income with which to use the property in the manner intended by the donor. In 1926, the Medical Society arranged that the United States Health Department should use the property as a hospital for the treatment of trachoma. This arrangement was continued until about 1950 when the U. S. Health Department withdrew from the project and returned the property to the Kentucky State Medical Association, successor to the Medical Society of Kentucky.

The State Medical Association, as a party to this suit, filed an appropriate pleading in which it presented its claim to the property. It was stated in this pleading that the Association is not in position to operate the property as a memorial hospital and the Association's right to sell the property and reinvest the proceeds in other hospital prop-

erty was put in issue. The trial court held that under the terms of the will the Medical Association does not have the right to sell the property. There is no appeal from that ruling.

The City's claim is based upon the following provisions of Mrs. Irvine's will:

"I certainly expect the board of good men I have selected will know for what these funds are used" (income from the Missouri real estate) "and that they are not squandered or wasted, that they are only used when positively required for frugal expenses, they will readily see this to be their high and conscientious duty for Remember one of the provisions in this writing gives Irvinton, this grand devise, as a Public Square or Park as a breathing spot to the City of Richmond, if the hospital should labor under difficulties and have failed in the purpose intended."

and

"It is my will that if the Irvine and McDowell Memorial should ever languish and not be a success, under the control of the Medical Society, and should cause Irvinton to revert to the City of Richmond as a public park. It is my will that the whole circle within the carriage drive and in front of the Irvinton house shall ever be reserved for the monument to my father, Col. David Irvine, Dr. Ephriam McDowell, and my husband, William M. Irvine, and my daughter, Bessie D. Irvine, and I will here make earnest request that the City of Richmond, Kentucky, care for this circle and keep it as an ornamental spot."

It is clear, we think, that Mrs. Irvine's first wish was that Irvinton should be used as a memorial hospital, and in the event that could not be done, it was her desire that the property should go to the City of Richmond as a public park. But there are difficulties. Another provision of the will provides:

"There shall be no public gatherings, such as fairs, chautauquas, picnics,

shows, meetings or crowds, to collect in the Irvinton grounds or within this devise, this must be strictly observed. This devise must be kept in quiet and neatness, a pleasant retreat for the sick, those who may be nursed back to usefulness by its beautiful shade and pure, life-giving air."

The will also provides:

"It is my will that the said Medical Society of Kentucky, to whom I have donated this home, shall bind themselves when they receive this property as herein devised never to permit any part of the acreage to be sold or used for school buildings or purposes in any way, with such Irvinton shall never be connected. It is my will that no streets or public roads shall ever be constructed through this devise or any part of it * * *. It is my will that this devise is exclusively for white patients, no colored or foreign allowed."

Other provisions, less specific, but which throw some light on Mrs. Irvine's state of mind, are these:

"It is my will, as to my heart Irvinton is the dearest of all possession, I feel assured that these ends will be met in the best possible manner, for that which I donate it, and may it prove a rich and lasting blessing under God to the languishing, the sick, the suffering, a joy to the good men having control and to the one cherishing the memory of the great surgeon, Dr. Ephriam McDowell,"

and

"But it is a sincere and cherished desire that the dear old home of my childhood be enjoyed by the sick. Its grateful sunshine and shadow bring to them renewed life and vigor.

"It is my will and I therefore dedicate Irvinton for the purposes herein stated, with a prayer that the Great God our Father will bless and smile upon what I have done and will pre-

serve it from the evil attending so many earthly enterprises."

The appellants rely on another clause of the will which reads:

"It is my will. That this devise of Irvinton shall never either by gift or sale be in any way connected or used by the Eastern Normal School of Richmond, Ky. or any other institution of learning, all claim to this devise as herein set forth shall be forefeited. Or if any President or Professor or Teacher, or any one connected with any institution of learning ever live or have the management or in any connected with this memorial,

"Irvine and McDowell

"It is my will, if such a state of case arise, then the said beautiful devise of Irvinton shall revert to the City of Richmond, Kentucky, as a public park with the same restrictions as are before given for its management, I would suggest that the small room attached to my own room as a maids room be used as a rest room for nurses."

It is said that this is the only part of the will which provides for a "reverter" to the City of Richmond; and since the contingency referred to in this clause has not happened, the City is not entitled to the property.

It is also contended by the appellants that the City cannot take the property because it cannot use it as a public park under the conditions prescribed in the will.

■ We do not agree that the "reverter" clause is the only provision of the will under which the City can take the property. Our consideration of the whole will convinces us that it was Mrs. Irvine's intention that the property should go to the City for use as a public park, in the event the Medical Society failed to use it for hospital purposes. Although the reverter clause is the only provision which provides specifically for a reversion to the City, other language in the will clearly indicates the testatrix intended that the City should take the property in the event the trust to the Medical Society failed.

■ Whether the City can accept the property for park purposes under the conditions imposed by the will presents a more difficult question. It is suggested by the City that the testatrix intended for the conditions which she attached to the property to apply only in the event it was used as a hospital. But we cannot overlook the statement in the so-called reverter clause that "then the said beautiful devise of Irvinton shall revert to the City of Richmond, Kentucky, as a public park with the same restrictions as are before given for its management." Clearly it was Mrs. Irvine's intention that the property would be used in a manner consistent with the directions contained in her will. But, as pointed out in Greenway v. Irvine's Trustee, the testatrix was an intelligent and capable woman. She knew, of course, that the City could not maintain the property as a park without permitting the general public to use it. We conclude, therefore, that the clause in the will prohibiting fairs, chautauquas, picnics, shows, et cetera, should be construed in a manner not inconsistent with the use of the property for park purposes. Since the testatrix devised the property to the City for a public park, we cannot say from this record that it cannot be used for that purpose. Many provisions of the will might be difficult for the City to meet, but we do not regard mere difficulty as sufficient reason for non-compliance with the terms of the will. Whether it will be feasible for the City to accept the property under the conditions which will be attached is not before us and we express no opinion on that question. We merely hold that if the property is accepted as a public park, it must be accepted under all the terms of the will which are not inconsistent with the use of the property for park purposes. Cf. Citizens Fidelity Bank & Trust Co. v. Isaac W. Bernheim Foundation, 305 Ky. 802, 205 S.W.2d 1003.

If the City decides to accept the property, it should, of course, have sufficient time

within which to manifest its ability to establish and maintain a public park under the conditions prescribed in the will. Searcy v. Lawrenceburg National Bank, 312 Ky. 610, 229 S.W.2d 312.

We note that the chancellor has retained this case on the docket for the determination of such other issues as might arise. Since the chancellor held that if the City accepts the property, it must take it subject to all the provisions, conditions and restrictions contained in the will, and since we are of the opinion the City is not required to comply with those conditions and restrictions clearly inconsistent with the use of the property for park purposes, this opinion should be considered as a modification of the judgment. But we reserve a specific opinion as to what character of management may be consistent or inconsistent with the use of the property as a park; and, further, the right, if any, of Mrs. Irvine's heirs to raise a question of whether the City has complied with the conditions and the result of any noncompliance.

The judgment is affirmed as modified.