Frances Perkins SLOWEY, etc., Appellants,

v.

Katie JENKINS et al., Appellees.

Court of Appeals of Kentucky.

Nov. 11, 1966.

Tom Alexander, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., George B. Boston, Bowling Green, for appellants.

Joe S. Garman, Marshall Funk, Bowling Green, for appellees.

HILL, Judge.

By this opinion, we undertake to construe Item III of the will of Anna Carroll Jenkins, first wife of Allen L. Jenkins. The controversy is between Katie Jenkins (the second wife of Allen L. Jenkins and appellee herein) and appellant Frances Perkins Slowey, the adopted daughter of Anna Carroll and Allen L. Jenkins.

Allen L. Jenkins died shortly after his second marriage, which was to appellee Katie Jenkins.

We quote "Item III" in its entirety:

"*ITEM III:* I give, devise and bequeath all of my remaining estate, of whatever kind and nature, that I may own at my death to my husband, Allen L. Jenkins. However, and without any limitation, restriction or encumbrance as to the title of my husband, Allen L. Jenkins, in and to the property devised and bequeathed to him above, I do request of him that in the event my adopted daughter, Frances Perkins Castleman, desires to make her home with my husband, Allen L. Jenkins, said home being located at 1807 Normal Boulevard, Bowling Green, Warren County, Kentucky, that in that event my husband grant her desire. Also, and again without any limitation, restriction or encumbrance as to the title of any of said property, I do request of my husband that should my adopted daughter, Frances Perkins Castleman, during the lifetime of my husband, because of any change in her physical, mental or financial condition require assistance, that my husband come to her aid and, if necessary, and if he so desires, that he will use any or all of my estate which he inherits from me under this will for her benefit.

"In the event my husband, Allen L. Jenkins, predeceases my adopted daughter, Frances Perkins Castleman, then in that event all of my estate shall go to my adopted daughter, Frances Perkins Castleman."

It was the opinion and judgment of the circuit court that Allen L. Jenkins took an absolute fee simple title "without any limitation, restriction or encumbrance." Under this judgment, appellee Katie Jenkins inherited from Allen L. Jenkins, who has since departed this life. Appellant Frances Perkins Slowey contends that her adoptive parent, Allen L. Jenkins, took a life estate, or "defeasible fee," under Item III of the

will of her adoptive mother. We agree and reverse the judgment.

■ Of course, the fundamental rule in will construction directs that the intention of the testator be determined from the contents of the will. Greenway v. White, 196 Ky. 745, 246 S.W. 137, 32 A.L.R. 1385 (1922); and Phelps v. Stoner's Adm'r, 184 Ky. 466, 212 S.W. 423 (1919).

■ More specifically, our question here is whether an initially devised fee title may be thereafter modified, qualified or reduced so as to reduce it to a life estate. The answer to this question is well stated in De-Courley v. Tucker, Ky., 383 S.W.2d 337, 338 (1964), from which we quote:

"Prior to our decision of April 23, 1948, in Hanks v. McDanell, 307 Ky. 243, 210 S.W.2d 784, 17 A.L.R.2d 1, * * * it was the rule in this state that where property is devised to one absolutely with unlimited power of disposition and by a subsequent provision of the will the testator undertakes to devise whatever may be left at the first taker's death, the limitation over is void and the first taker acquires a fee simple title * * *. The Hanks case abolished this rule * * *."

It was written in Hanks, supra:

"It will be remembered that the Polar Star rule is that the intent of the maker of the instrument shall prevail and be enforced, unless it antagonizes a statute or is against public policy. We have no statute forbidding the modification or qualification of the apparent fee title given to the first taker so as to reduce that title to a life estate. Therefore, the only ground for the declaration and application of the 'Biting' rule, which as we have said has prevailed in this state for a number of years, is that it is *against public policy*.

\* \* \* \* \* \*

"To first vest one with a fee title, but in the same conveying instrument manifest an intent and purpose to limit it to a life estate (even with power to encroach upon the corpus of the property) and then direct that if the first taker should die without appropriating for his personal benefit the entire property, the remnant thereof should go to others *is not forbidden by any definition of public policy*." (Emphasis ours.)

The circuit court concluded the use of the words "without any limitation, restriction or encumbrance as to title" in Item III had such "impact on the testator's intention" that "nothing bestowed upon her (the daughter) shall establish a limitation, restriction or encumbrance upon the title of property given the husband."

It must be remembered that the same words were used in connection with testator's "request" that the daughter be allowed to reside in the house at 1807 Normal Boulevard, in the event she so desired, as were used in connection with her "request" that in the event the daughter "required assistance," her needs be met. These words of limitation and restriction have no reference to the last paragraph of Item III. It clearly provides one, and only one, condition on which the daughter may inherit the remnant of her estate, and that condition is: "In the event my husband, Allen L. Jenkins, predeceases my adopted daughter. * * *"

We have no difficulty in arriving at the intention of the testator. Our perplexity is brought about by the various and indiscriminate designations of certain estates by the writers of our case law. The estate taken by the husband in the present case has been variously designated a "defeasible fee," a "consuming life estate," and others.

At common law, an absolute fee simple title with power of disposition or appointment could not be followed by or converted into a remainder or executory interest because the two estates were considered repugnant and impossible as the entire estate had already vested in the holder of the fee simple title. We quote an interesting comment by J. J. Dukeminier, Jr., from the

Minnesota Law Review, Vol. 43:13, p. 28 (1958–59):

"Out of a dictum of Chancellor Kent grew a rule that an executory interest limited after a fee was void if the owner of the fee had the absolute power to dispose of the property. The typical situation in which this rule may be invoked is a devise of property 'to my wife absolutely, to do with as seems best for her, but if any of the property remains undisposed of at her death, then to A.' The remnant gift over to A, an executory interest, is void if the rule is applied. The rule can not be applied to a contingent remainder, since the rule presupposes the prior estate is a fee, and a remainder by definition cannot follow a fee.

"The *rule is entirely illogical as a matter of theory. There is no reason why a valid executory interest cannot be limited subject to being destroyed by the exercise by another of a power of disposition.*" (Emphasis ours.)

A suitable definition of the estates created in the present case may be found in Restatement of the Law, Property, section 46, p. 147, from which we quote:

"(1) Except as stated in Subsection (2) (no application here), an estate in fee simple subject to an executory limitation exists when any limitation, in an otherwise effective conveyance of land,

(a) creates an estate in fee simple in a conveyee, or leaves an estate in fee simple in the conveyor or his successor in interest; and

(b) provides that the estate subject thereto, upon the occurrence of a stated event is to be divested, before the normal expiration thereof, in favor of another interest in a person other than the conveyor, or his successor in interest."

■ Allen Jenkins had a defeasible fee simple title with a power to convey a fee simple absolute title as to any or all of the property. That is, his fee simple title was subject to being defeated by the contingency of his predeceasing Frances without having theretofore exercised his power of disposal. Frances had a contingent future interest denominated as an executory interest, or an estate upon a conditional limitation. That is, the fee simple title to whatever Allen Jenkins had not transferred or consumed during his lifetime was limited to shift from him to her if and when he died and she survived. Though not recognized by the common law of medieval times, this cutting off and transference of a fee simple title, called a shifting use, was legitimated in law as well as equity by the Statute of Wills (1540) and the Statute of Uses (1536).

The judgment is reversed with directions to enter another consistent herewith.