AGNES DAVIS EXTON, GRACE DAVIS BARNES, WILLIAM HENRY DAVIS, AND A. CLIFFORD SHINKLE AND MARIE THERESE HINKLE, EXECUTORS UNDER THE WILL OF KATE DAVIS HINKLE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77483.   Promulgated October 17, 1935.

*Jerome F. Barnard, Esq., Robert A. Taft, Esq.*, and *John H. More, Esq.*, for the petitioners.
*Lewis S. Pendleton Esq.*, for the respondent.

### OPINION.

SEAWELL: This case involves a deficiency in Federal estate tax proposed against the estate of Therese Davis McCagg, who died a resident of Washington, D. C., February 3, 1932. The deficiency asserted is $1,269.53, and of that amount the sum of $1,166.06 is in dispute, the error assigned being the action of the respondent in including as a part of the gross estate of the decedent, with values as of the date of her death, a one-sixth interest in certain real estate in the city of Cincinnati, Ohio, comprising property held at the death of the decedent by the Central Trust & Safe Deposit Co. of Cincinnati, Ohio, as trustee, under a declaration of trust executed by it under date of July 12, 1913, the valuation of the one-sixth interest included as aforesaid being put at $47,556.67 by the respondent, which sum, together with one sixth of the accrued rentals on the property to date of the death of the decedent, amounting to $137.50, makes the sum of $47,694.17 which is alleged to have been erroneously included in the gross estate of the decedent as determined by the respondent.

This proceeding came before the Board on the petition of Arthur B. Wells, executor under the will of Therese Davis McCagg. Since the filing of the petition on September 27, 1934, the executor has died and upon representation that no fiduciary has been or will be appointed, the administration of the estate having been closed, upon motion duly made, the parties now appearing as petitioners, constituting all the residuary beneficiaries under clause 39 of the will of Therese Davis McCagg, deceased, were substituted in place and stead of Arthur B. Wells, executor.

After making numerous special bequests to her sisters, a brother, and others, the decedent bequeathed and devised to her sisters and brother as shown in clause 39 of her will.

Clause 39 referred to is as follows:

All the rest, residue and remainder of my estate, whether real, personal or mixed, of whatsoever kind and wheresoever situate, I give, devise and bequeath to my sisters, Katherine Davis Hinkle, Agnes Davis Exton and Grace Davis Barnes, and my brother, William Henry Davis; or in case of the death of any one or more of them, before my death, to such of them as shall survive me, to them, their heirs and assigns forever.

Kate Davis Hinkle (same as Katherine Davis Hinkle) died testate, and on August 29, 1932, A. Clifford Shinkle and Marie Therese Hinkle were appointed and qualified as executors under her will and are now so acting.

It is stipulated that each of the petitioners received assets from the estate of Therese Davis McCagg, deceased, of a value in excess of the deficiency involved, and that the respondent makes no contention that the " transfer pursuant to which the said declaration of trust was executed was made in contemplation of death."

On July 12, 1913, there was executed by the Central Trust & Safe Deposit Co. as trustee a " Declaration of Trust ", portions of which deemed material to the issues herein are as follows:

Know all men by these presents, that, whereas, Holden Davis, Kate D. Hinkle, Therese D. McCagg, Agnes D. Eckstein, Grace D. Barnes and William Henry Davis, hereinafter called the beneficiaries, by deeds of even date herewith, have conveyed to The Central Trust & Safe Deposit Company, a corporation organized under the Laws of the State of Ohio, doing business in the City of Cincinnati in said State, its successors and assigns, all those several tracts of land situated in said City of Cincinnati, described briefly as follows:

\*  \*  \*  \*  \*  \*  \*

Now the said The Central Trust & Safe Deposit Company, hereinafter referred to as said Trustee, hereby acknowledges and declares that said conveyances were made to, and all and singular the property aforesaid is to be held by it and its successors, upon the following trusts, and with the following powers:

(1) During the existence of said Trust said Trustee shall collect and receive the rents, issues and profits arising from said premises, and after deducting therefrom taxes, cost of insurance and repairs, and all other necessary and proper charges and expenses, including commissions paid to real estate agents in cases of sale or lease made by said Trustee, and the compensation of said Trustee, which shall not exceed 3½ per centum of the gross income received by it, shall pay over annually the residue of said income in monthly installments as nearly equal as may be, on the tenth day of each month to the beneficiaries, one sixth (⅙) to each, or to such persons as they may respectively designate by written order given to said Trustee as each installment becomes due, without power of anticipation; and in case of the death of any of the beneficiaries before the termination of the trust his or her share of said net income shall be similarly paid without power of anticipation as he or she may by will direct,

or on failure of such direction, or in so far as the same may not extend, to his or her heirs at law.

\*      \*      \*      \*      \*      \*      \*

(7) The net proceeds of every sale shall be distributed to the beneficiaries in equal parts, one sixth to each beneficiary, as soon as practicable after the receipt of the same; and in case of the death of any beneficiary before any such distribution, his or her distributive share shall be paid as he or she may by will direct, or on failure of such discretion or in so far as the same may not extend, to his or her heirs at law. On every such distribution the Trustees may retain 1½ per centum of the sum to be distributed as its commission and in compensation of its services.

\*      \*      \*      \*      \*      \*      \*

(10) Upon the sale of all the property aforesaid, and distribution of the proceeds thereon, or on the death of the survivor of said beneficiaries, whichever said events shall first occur, said trust shall expire by limitations. And said trust may be terminated in whole or in part, or altered or amended at any time by writing signed by all persons then entitled to receive distributive shares of sales, and delivered to said trustee, it being understood that distributees under disability or minority or otherwise may act in such matter by their guardians; any distributee may act by an attorney in fact appointed as required for the conveyance of real estate; and the trustee may resign said trust upon making of any alteration or amendment other than a total or partial revocation, or upon sixty (60) days notice in writing to all of those then entitled to distributive shares of sales. Upon the termination of said trust before distribution of all the assets thereof, such distribution shall at once be made to the persons and in the proportions above provided with reference to distribution of proceeds of sales.

The deed, which those designated as " beneficiaries " in the " declaration of trust " made to the Central Trust & Safe Deposit Co., is not in evidence.

The Federal revenue statutes involved in the consideration and discussion of the issues in the instant case are section 302 of the Revenue Act of 1926 and its subsections (a), (c), (d), (f), and (h)—subsection (c) as amended by the joint resolution of the House and Senate of March 3, 1931, and as further amended by section 803 (a) of the Revenue Act of 1932, and subsection (f) as amended by section 803 (b) of the Revenue Act of 1932. Only such portions of the statutes as are thought pertinent are here quoted:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

\*      \*      \*      \*      \*      \*      \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained

for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

*            *            *            *            *            *            *

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of or intended to take effect in possession or enjoyment at or after his death, or (3) by deed under which he has retained for his life or any period not ascertainable without reference to his death or for any period which does not in fact end before his death (A) the possession or enjoyment of, or the right to the income from, the property, or (B) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth; * * *

*            *            *            *            *            *            *

(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

It is not contended that the " transfer pursuant to which the said declaration of trust was executed, was made in contemplation of death ", nor has evidence to establish such as a fact been adduced. The respondent, however, does contend that the property held in trust by the Central Trust & Safe Deposit Co. to the extent of one sixth of its value at the date of the death of Therese Davis McCagg must be included in her gross estate in order to afford a proper basis for measuring the value of the economic benefits in property transferred upon her death by reason thereof.

The record shows the instrument creating the trust was executed July 12, 1913, prior to the enactment of the original Federal Estate Tax Act of September 8, 1916, and years before the amendments to the 1926 Revenue Act to which reference has been made above. It also shows Therese Davis McCagg died in 1932 prior to the effective date of the 1932 amendments mentioned.

It is argued in behalf of the petitioners that the brother and sisters of Therese Davis McCagg, deceased (sometimes referred to herein as

the decedent), acquired and held on July 12, 1913, as remaindermen, vested interests in the property held in trust by virtue of a transfer *inter vivos* begun and completed prior to the enactment of the original Federal Estate Tax Act of 1916 and that there was upon the death of Therese Davis McCagg no transfer of property from her to them upon which an estate tax might be asserted or imposed.

If there was in fact such an absolute and completed transfer of vested rights and interests in 1913 to the decedent's brother and sisters as counsel for petitioners assert and there was on the death of the decedent no passing or transfer of other or additional rights or interests to them by reason of her death and will, of course there would be no estate tax liability under any of the Federal estate tax statutes, no matter on what date the decedent died. *Schwab* v. *Doyle*, 258 U. S. 529; *Nichols* v. *Coolidge*, 274 U. S. 531.

This contention of the petitioners is very similar to that of the plaintiffs in *Saltonstall* v. *Saltonstall*, 276 U. S. 260 (Massachusetts statutes taxing inheritances being involved) in which case the Court said:

* * * It is said that they [plaintiffs] had vested interests or remainders subject only to being divested by the exercise of the reserved power, which never happened; that as their remainders vested before the enactment of the taxing statutes these cannot constitutionally be applied to them under the rule laid down by this court in *Nichols* v. *Coolidge*, 274 U. S. 531, 41 S. Ct. 710, 71 L. Ed. 1184.

Thereafter the Court said:

So long as the privilege of succession has not been fully exercised it may be reached by the tax. * * * And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices. A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. *Bullen* v. *Wisconsin*, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830. The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another. And so the property passing to the beneficiaries here was acquired only because of default in the exercise of the power during the donor's life and thus was on his death subject to the state's power to tax as an inheritance.

While what the Court said was in considering and discussing a different tax and law, the reasoning employed and the principles enunciated and applied to the facts in that case seem to us applicable in the instant case.

In 1913 there was certainly no absolute and completed transfer with respect to the vested equitable interest of Therese Davis McCagg in the trust property to her brother and sisters. She had at that

time and thereafter exactly the same character and extent of interest in the property held in trust that they had, and the trust instrument by virtue of which she held such interest provided that the trustee might sell and convey the property in fee simple, with the approval of a majority of aforesaid children that might be then living, and provided that the net proceeds of every sale should be distributed to the beneficiaries in equal parts and that, in case of the death of any beneficiary before any such distribution, " his or her distributive share shall be paid as he or she may by will direct, or on failure of such discretion or in so far as the same may not extend, to his or her heirs at law."

It was further provided in the trust instrument that it might " be terminated in whole or in part, or altered or amended at any time by writing signed by all persons then entitled to receive distributive shares of sales, and delivered to said trustee " and " Upon the termination of said trust before distribution of all the assets thereof, such distribution shall at once be made to the persons and in the proportions above provided with reference to distribution of proceeds of sales." In view of the provisions just quoted and also others embodied in the trust instrument, in our opinion, and we so hold, there was in 1913 no completed transfer of interests to the brother and sisters of the decedent as insisted in behalf of petitioners, nor in any sense that would make the transfer or passing of the equitable rights and interests of the decedent in the trust property to her brother and sisters upon her death not subject to the Federal estate tax.

The entire equitable interest of the decedent in the property held in trust was retained by her until her death and the property and enjoyment thereof then passed from her to others at her death and by reason of her death and will.

All of the beneficiaries (the children of William Henry Davis, the elder) had equal rights and interests in the property held in the trust, which might be terminated by the decedent in conjunction with the others. In fact, the trust arrangement appears to have been in the nature of what might be termed a family trust, one in which brothers and sisters equally interested in certain property inherited from their father which they concluded could best be managed if the legal title and control of the property, its rental, lease, or sale were in one instead of in six individuals, hit upon the plan of each conveying his or her interest in the property to a corporation, the Central Trust & Safe Deposit Co., which would and did on the same day execute for their benefit a trust instrument embodying provisions relative to the property they conveyed which they evidently authorized or approved. Instead of each of the six children conveying his or her interest in the

property in question to the corporation as trustee or in trust and therein and thereby creating a trust in his or her favor, all conveyed their interests in the property to the corporation, which on the same day executed the declaration of trust described, retaining in itself the legal title.

We think the facts and circumstances disclosed by the record warrant the conclusion that the provisions in the trust instrument for the benefit of the "beneficiaries" designated therein were put in by their direction and that when they conveyed their property to the corporation it was with the understanding and agreement that the corporation would immediately—as it did—execute the declaration of trust or trust instrument containing the provisions for the benefit of the "beneficiaries."

The purpose and effect of their action were the same as if they had themselves directly created the trusts instead of deeding their property to the corporation and having it create the trusts desired and directed by them. They owned the property and caused the trusts to be executed, permitting the legal title to remain in the trustee.

The terms and conditions in the trust instrument in the instant case are quite different from those of the trust in the case of *Williams* v. *United States*, 41 Fed. (2d) 895, relied on by petitioners in support of their contention that, as subsections (c) and (d) of section 302, *supra*, each contains the language: "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise," and the trust in the instant case was established, not by the decedent, but by the corporation, there is no liability to estate tax under those subsections.

In view of the facts and circumstances shown by the record, we hold the case of *Williams* v. *United States, supra*, and the principles therein enunciated, are not applicable and controlling in the instant case.

Another insistence in behalf of petitioners is that, as the trust instrument was executed in Ohio, the property was situated there and the trustee was located there, the trust is subject to and governed by the laws of the State of Ohio, in the light of which, the power of appointment reserved in the trust to the decedent to appoint by will was never, in fact, exercised by her, and hence her interest in the trust is not affected thereby and forms no part of her estate, having passed in default of appointment and not under the power of appointment (see section 302 (f), *supra*), and in support of such contention petitioners cite a number of cases, apparently relying chiefly on *Kiplinger* v. *Armstrong*, 34 Ohio App. 348; 171 N. E. 245, which cites other cases to which counsel also refer.

In the above case, which is the only one we deem it necessary to refer on this point, the court said in part:

From our examination of the books, we believe it may be accurately stated that an intention to execute a testamentary power is shown when specific reference is made in the will to such power; when the will disposes of the subject-matter of the power; or when the provisions of the will will not have any operation except as an execution of the power.

The modern tendency seems to be to relax the rule requiring the intention to execute the power to be clearly established, and to hold that if, from the tenor and effect of the will, construed in the light of the circumstances surrounding the testator at the time of the execution of the power, it can be fairly determined from all the competent evidence available that it was the intention of the testator to execute the power, such intention will be given effect. But where the testator has other property, so that the provisions in the will would be effectual without the exercise of the power, and there is no reference in the will either to the power or to the subject-matter of the power, it is generally held that it has not been shown that there was an intention to execute the power.

In the light of that decision and the facts and circumstances of the instant case, we are of the opinion and hold that the decedent intended in and by her will to exercise the power of appointment which in the declaration of trust was reserved to or retained by her and did so exercise it in clause 39 of her will, in which she bequeathed and devised to her sisters and brother (naming them) " all the rest, residue and remainder " of her estate " of whatsoever kind and wheresoever situate."

The rights and interests owned and enjoyed by the decedent in the instant case and the power of appointment which she exercised by will are similar to those owned and exercised by Henry C. Whitlock, as disclosed by the opinion of the court in *Whitlock-Rose* v. *McCaughn*, 21 Fed. (2d) 164. In that case the court stated that the Federal estate tax had been paid on the property over which Whitlock had the power of appointment and had devised " his residuary estate, which included the estate held in trust for him under the last will and testament of his father [Friend Whitlock], over which he had the power of appointment, to his niece, ' Eliza Whitlock-Rose, her heirs and assigns forever, in fee simple ' ", and that the suit was brought by his executrix to recover the tax. After so stating and quoting the provisions of section 402 (e) of the Revenue Act of 1918—the statute then applicable and corresponding to section 302 (f) of the Revenue Act of 1926—the court, in part, said:

The question for determination is whether or not the property on which the tax was assessed and collected passed from Henry to Elise Whitlock-Rose under a " general power of appointment." * * *

This use of the term, "general power of appointment," is in harmony with general usage. A power is regarded as " general " when it is not restricted by the donor to particular objects or beneficiaries, though the method of exer-

cising it may be restricted and limited to a testamentary paper. *Tucker* v. *Alexander* (C. C. A.) 15 F. (2d) 356; *Hume* v. *Randall*, 141 N. Y. 499, 503, 36 N. E. 402; *Greenway* v. *White*, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385. "A general power of appointment by will enables the donee to devise the property of [to] any person who may have the capacity to take." Underhill on the Law of Wills.

Property subject to a power of appointment under a will is a general power, and is equivalent to a fee. *Lane* v. *Lane*, 4 Pennewill (Del.) 368, 55 A. 184, 64 L. R. A. 849, 103 Am. St. Rep. 122; *Bingham's Appeal*, 64 Pa. 345; *Pennsylvania Co., etc.,* v. *Lederer* (D. C.) 292 F. 629; *Bullen* v. *State of Wisconsin*, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830. * * *

The power created by the will of Friend Whitlock permitted Henry C. Whitlock to appoint "by any last will and testament" any person whomsoever he wished, and it was therefore a general power, and was subject to the tax.

The decree of the district court is affirmed.

In *United States* v. *Field*, 255 U. S. 257, the Court passed on the question whether the Revenue Act of September 8, 1916, as amended by the Act of March 3, 1917, imposed an estate tax on a certain interest that passed under testamentary execution of a general power of appointment created prior, but executed subsequent, to its passage. In its opinion, holding that such interest was not subject to the tax, the Court said:

It would have been easy for Congress to express a purpose to tax property passing under a general power of appointment exercised by a decedent had such a purpose existed; and none was expressed in the act under consideration. In that of February 24, 1919, which took its place, the section providing how the value of the gross estate of the decedent shall be determined contains a clause precisely to the point (section 402 [e], 40 Stat. 1097):

"To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except," etc.

Its insertion indicates that Congress at least was doubtful whether the previous Act included property passing by appointment. * * *

The section of the 1926 Revenue Act corresponding to the section above quoted is section 302 (f), which contains the same language the Court said was "precisely to the point", indicating such change in the law as would authorize the imposition of an estate tax on an interest that passed under testamentary execution of a general power of appointment, such as, in our opinion, occurred in the instant case.

Section 302 (a) of the Revenue Act of 1926, unlike the corresponding sections of the earlier acts, does not limit the interest of a decedent for estate tax purposes to one which is "subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate" (see *Crooks* v. *Harrelson*, 282 U. S. 55), but specifically includes the value of any interest of the decedent "at the time of his death" in "all property, real or personal, tangible or intangible, wherever situated."

Irrespective of whether the interests of the sisters and brother of the decedent were vested or contingent prior to the decedent's death, the decedent's interest at the time of her death is, in our opinion, nevertheless taxable under the provisions of section 302 (c), *supra*, on account of the power possessed by her to dispose of the income and principal by her will and the shifting of the economic benefits of the property upon her death, whether or not she exercised her power of appointment by will. The phrase in section 302 (c), *supra*, " to take effect in possession or enjoyment at or after his death " includes the interests in a trust passing from the control of the donor or settlor at his death. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Chase National Bank* v. *United States*, 278 U. S. 327; *Kate Allerton Johnstone, Executrix*, 29 B. T. A. 957; affd., 76 Fed. (2d) 55.

The provisions of subdivision (d) of section 302 of the Revenue Act of 1924, reenacted in the 1926 Act, were inserted to prevent avoidance of Federal estate tax through the creation of trusts which might be altered, amended, or revoked " by the decedent alone or in conjunction with any person."

Referring to the provisions of that section, the Supreme Court in *Burnet* v. *Wells*, 289 U. S. 670, said:

* * * Through the devices thus neutralized, as well as through many others, there runs a common thread of purpose. The solidarity of the family is to make it possible for the taxpayer to surrender title to another and to keep dominion, for himself, or, if not technical dominion, at least the substance of enjoyment. * * *

In this connection also see *Porter* v. *Commissioner*, 288 U. S. 436.

The propositions relied on by petitioners and the numerous decisions cited and discussed in the briefs of their counsel to sustain them have been carefully considered, though we have not herein undertaken to discuss the same in detail, for the reason that the authorities we have quoted or cited as applicable to the facts and circumstances of the instant case convince us, and we so hold, that the respondent did not commit error in including as a part of Therese Davis McCagg's gross estate the sum of $47,694.17 representing one sixth of the value of certain property held by the Central Trust & Safe Deposit Co. under the trust agreement dated July 12, 1913, at the date of decedent's death.

Since each of the petitioners received assets from the estate of Therese Davis McCagg, deceased, in excess of the deficiency involved, each is liable for the amount of the deficiency. One payment, however, will discharge the whole deficiency. *Phillips* v. *Commissioner*, 283 U. S. 589; *Kathleen O'Brien*, 20 B. T. A. 167; *W. O. Menger*, 17 B. T. A. 998.

*Decision will be entered for the respondent.*